EXHIBIT
B1

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO<br><br>Plaintiff,<br><br>-vs-<br><br>DEY, INC., et al.,<br><br>Defendants. | : | CIVIL CASE NO.: A0402047<br><br>JUDGE: Beth A. Myers |
| STATE OF OHIO<br><br>Plaintiff,<br><br>-vs-<br><br>ROXANE LABORATORIES, INC., et al.,<br><br>Defendants. | : | CIVIL CASE NO.: A0409296<br><br>JUDGE: Robert P. Ruehlman |

## DECISION

These two cases were consolidated on February 14, 2005. All Defendants have filed motions to dismiss. The motions were argued on March 7, 2005 following briefing. The parties have filed supplemental authorities. For the reasons discussed below, the motions to dismiss are granted in part and denied in part. Further Plaintiff is granted leave to amend its Complaint in accordance with this decision.

## BACKGROUND

The State of Ohio brings this action against various drug manufacturers alleging that Defendants' actions caused Plaintiff and the citizens of Ohio to overpay for prescription drugs

under the Ohio Medicaid Program. The State alleges that Defendants knowingly and intentionally published false price information in order to cause the State to overpay for prescription drugs. Defendants argue that all claims should be dismissed.

The briefs of the parties set forth the background regarding Medicare and Medicaid reimbursement for prescription drugs. Defendants detail the legislative history of the system, and refer this Court to numerous attachments in their Appendix and supplemental filing. Defendants urge the Court to take judicial notice of all materials. Among other things, Defendants urge the Court to interpret "WAC" and "AWP" using the numerous materials. As an initial matter, the Court notes that this matter is before it on a motion to dismiss. Much of the attached information is not information the Court will take judicial notice of and will not consider for purposes of a motion to dismiss. In addition, on a motion to dismiss, the Court must take all allegations of the Complaint as true.

Plaintiff's claims are based upon the theory that the pricing information provided by Defendants to publishers – the average wholesale prices ("AWP") and wholesale acquisition costs ("WAC") – were false and resulted in the State overpaying for prescription drugs. State Medicaid and Federal Medicare rely on AWPs and WACs in determining reimbursement. Reimbursement is made by the State to the health care providers, not the Defendant drug manufacturers.

## STANDARD

In order to dismiss a complaint pursuant to Civ. R. 12(B)(6) for failure to state a claim upon which relief can be granted, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v. University Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus. When ruling on a

motion to dismiss, the court must accept all allegations of the complaint as true and make all reasonable inferences in favor of the non-moving party. Vail v. Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182, 184.

## DISCUSSION

Plaintiff brings several causes of action. Defendants argue that each one should be dismissed. The Court will address each separately.

### 1. COUNT I – FRAUD

Defendants argue that Plaintiff has failed to plead the necessary elements for fraud. Specifically, Defendants claim that Plaintiff has not sufficiently alleged that: 1) Defendants made a false representation; 2) Defendants had a duty to disclose any alleged concealment; and 3) the state justifiably relied on any misrepresentation. State ex rel. The Illuminating Company v. Cuyahoga County Court of Common Pleas (2002), 97 Ohio State 3d 69.

#### a. False Statement

Plaintiff alleges that WAC and AWP should be the actual discounted prices paid for Defendants' drugs, and that therefore the published WACs and AWPs were fraudulently inflated.

Defendants claim there is no allegation of any false statement by Defendants. In particular, Defendants claim that Plaintiff's allegation that Defendants intend WAC and AWP to be understood as the average price is insufficient. Finally, Defendants claim that there is no allegation that the WACs and AWPs were false.

Plaintiff points to several allegations of the Complaint which it claims adequately sets forth the alleged misrepresentations. For example, Plaintiff points to Paragraph 16:

> Defendants provide to the State and ODJFS [the Ohio Department of Job and Family Services] directly and/or through submission of reports to drug pricing publishing services what purports to be genuine pricing data for its products. This information is typically

> identified as the "Wholesale Acquisition Cost" ("WAC") and/or the "Average Wholesale Price" ("AWP") of particular products. The defendant manufacturers intend the WAC to be understood by ODJFS as the average price paid by wholesalers to the manufacturers for prescription drugs. The defendant manufacturers intend the AWP to be understood by state Medicaid agencies such as ODJFS as the average price charged by drug manufacturers at wholesale to distributors and their largest commercial customers for prescription drugs. At all times relevant to this action, each of the defendant manufacturers provided information on AWP and WAC prices for prescription drugs, or other drug pricing information, to publishers such as First Data Bank ("FDB"), Medical Economics (publishers of the "Red Book") and Medispan, all of which are price reporting services. These drug-price publishing services in turn compile, publish and distribute compendia of such pricing information for each Defendant's products. The drug-price publishing services purport not to investigate the accuracy of the information provided by the manufacturers, and disclaim responsibility for its accuracy.

Plaintiff also relies on Paragraph 20:

> The Defendants knowingly and intentionally inflated the reported WACs and AWPs for their drugs. The Defendants knew that their false and deceptive inflation of the WACs and AWPs for their drugs would cause the Ohio Medicaid program to pay excessive amounts for these drugs. The Defendants' inflated WACs and AWPs greatly exceeded the actual prices at which they sold their drugs to physicians and wholesalers. Thus, the Defendants' reported " wholesale prices" and "wholesale acquisition costs" were false and misleading and bore no relation to any price, much less a wholesale price. The Defendants concealed their actual wholesale prices from the Ohio Medicaid program. Such representations were made with the intent to induce continued reliance on Defendants' AWP and WAC, and were further intended to prevent ODJFS from discovering that Defendants' AWP and WAC were far higher than the actual wholesale prices Defendants charged.

The Court finds that Plaintiff has sufficiently alleged that Defendants made false representations. As discussed below, however, the Court finds that these conclusory allegations are insufficient under Rule 9(B) and therefore requires Plaintiff to file an Amended Complaint.

b. Duty to Disclose

Defendants also argue that Plaintiff does not allege any duty to disclose in connection

with its theory that Defendants concealed the "true price". Plaintiff cannot state a claim under a concealment theory in the absence of a duty to disclose. Kelly v. Ford Motor Credit Co. (2000) 137 Ohio App. 3d 12.

A duty to disclose arises only when both parties understand there to be a fiduciary relationship or other special relationship of "trust and confidence" between them. Blon v. Bank One, Akron, N.A. (1988), 35 Ohio St.3d 98, 101, 519 N.E.2d 363; Ed Schory & Sons, Inc. v. Society Nat'l Bank (1996), 75 Ohio St.3d 433, 442, 662 N.E.2d 1074. Furthermore, a duty to disclose does not exist in arm's length commercial transactions with respect to pricing structures. See Blon v. Bank One, Akron, NA., 35 Ohio St.3d at 101 (finding no duty to disclose where a bank failed to disclose to a customer that lower interest rates were available or that the loan officer received a greater fee if he made a higher interest rate loan); Kelley v. Ford Motor Credit Co., 137 Ohio App.3d at 16; Umbaugh Pole Bldg. Co. v. Scott (1979), 58 Ohio St.2d 282, 287, 390 N.E.320.

Defendants argue that they had no duty to the State to disclose the "true prices", and thus cannot be liable for common law fraud.

In response, Plaintiff does not dispute the law or arguments made by Defendants. Plaintiff states that this is not a case of concealment, but rather affirmative misrepresentation. Thus, Defendants' arguments are moot.

c. Justifiable Reliance

In their final argument regarding Plaintiff's common law fraud claim, Defendants argue that Plaintiff has failed to state that it justifiably relied on any misstatement by Defendants. Justifiable reliance is an element of fraud. Beneficial Finance Co. v. Smith (1968), 15 Ohio App.2d 210; accord Doyle v. Fairfield Machine Co., Inc. (1997), 120 Ohio App.3d 192, 210, 697

N.E.2d 667; Bradley v. Bessick (April 12, 2000), Lorain App. No. 98CA007182 ("The heart of any claim of fraud is that the injured party changed his position in reliance on the false representation and was injured by his action in reliance on the representation.") Plaintiff does not dispute this. Rather, Plaintiff states that it has properly alleged justifiable reliance.

Defendants state that Plaintiff has not and cannot allege this element. Defendants state that the public record establishes that the State could not have reasonably relied on the published WACs and AWPs. In this regard, Defendants rely on documents, government reports, and sworn testimony. For purposes of the motion to dismiss, the Court will not consider the majority of this information. The Court will not take judicial notice of these materials. Under Rule 201 Ohio Rules of Evidence, the Court does not find the facts to be capable of accurate and ready determination. Even if the Court considered these attachments, however, Plaintiff has alleged that it did rely on WACs and AWPs, and that it believed certain things about these prices. On a motion to dismiss, the Court must accept the allegations as true.

Defendants also rely on the Complaint itself and point out that the State reimburses providers at 12.8% discount off of AWP. This, Defendants argue, belies any claim that the State was misled into believing that AWP was an average of discounted prices at wholesale. Moreover, Defendants point to other information which it claims establish that the State knew the true meaning of AWP and WAC. While Defendants may ultimately prevail on this claim, it cannot be said that Plaintiff has failed to properly allege this element. In fact, as pointed out by Plaintiff, the Complaint does allege justifiable reliance. "Defendants were aware that ODJFS uses, and relies on, the information regarding AWP and WAC provided by Defendants to ODJFS and the price-reporting services to determine the amounts paid for reimbursement of prescription drugs under Ohio Medicaid." (Complaint, ¶ 17). Moreover, the Complaint states:

> At all times relevant to this action, ODJFS had no knowledge of, and had no means of learning, the actual prices each of the Defendants charged its customers for its products. Rather, ODJFS obtained pricing information from Defendants, directly and indirectly, and reasonably relied on this information in determining the Medicaid reimbursement levels for the products of each of the Defendant manufacturers. (Complaint, ¶ 19)

Furthermore, Paragraph 34 of the Complaint alleges that "ODJFS and such other Ohio agencies and instrumentalities reasonably relied on such false pricing data in setting drug reimbursement rates."

The Court cannot say at this stage that Plaintiff can prove no set of facts entitling it to relief.

2. RULE 9(B)

Defendants also argue that all counts of the Complaint fail to comply with Rule 9(B). Ohio Civil Rule 9(B) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(B) applies, regardless of the cause of action or theory of liability, whenever a Plaintiff avers fraud on the part of the Defendant. See Galloway v. Lorimar Motion Picture Mgmt., Inc. (1989), 55 Ohio App.3d 78, 82, 562 N.E.2d 949; Van-Am. Ins. Co. v. Schiappa, 191 F.R.D. 537, 541-42 (S.D. Ohio 2000). The circumstances of fraud that must be pleaded with particularity "include the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud." Baker v. Conlan (1990), 66 Ohio App.3d 454, 458, 585 N.E.2d 543. The underlying determination is whether the allegation is "specific enough to inform the defendant of the act of which the Plaintiff complains, and to enable the defendant to prepare an effective response and defense." Id.

a. Payment based on WAC or AWP

Defendants first claim that the State failed to allege that the Ohio Medicaid Program or Ohio medicaid beneficiaries paid based on WACs or AWPs. Under Ohio's reimbursement system, several different methods may be used. The State's reimbursement formula requires it to reimburse at the lowest of several alternatives, only one of which even references WAC or AWP. *See* Compl. ¶ 15; Ohio Adm.Code 5 101:3-9-05. The State does not specify whether it paid for any Defendant's drugs based on the AWP or WAC for those drugs, as opposed to other amounts, such as the FUL, the MAC, or the providers' usual and customary charges, that are unrelated to any Defendant AWP or WAC.

Defendants claim that Plaintiff's Medicare allegations suffer from the same defect. Medicare co-payments are based on the lesser of provider's actual charges or 95% of AWP. See Section 405.517, Title 42, C.F.R. If a provider's charges are less than 95% of AWP, Medicare reimbursement and co-payments are not based on AWP. Furthermore, Medicare allows reimbursement for multiple-source drugs, such as those at issue in the Complaint, at a flat rate calculated as "the lesser of the median average wholesale price for all sources of the generic forms of the drug or biological or the lowest average wholesale price of the brand name forms of the drug or biological." Id. Defendants claim the State has thus failed to allege that reimbursement of any Defendant's drug under Medicare was based on the published AWP or WAC for that drug.

In its Memorandum in Opposition, the State seems to clarify some allegations and states that Ohio Medicaid paid based on WAC. At oral argument, there was some confusion about this. The Complaint needs to be amended to properly set forth the claims.

The Court finds that Plaintiff has failed to meet the requirements of Rule 9(B). While

dismissal is an available remedy, the Court in this case will permit Plaintiff to amend its Complaint to attempt to comply with Rule 9(B).

a. Failure to Identify Fraudulent Statement

Defendants next argue that Plaintiff failed to identify the allegedly fraudulent statements or to explain how the published AWPs and WACs are false. In this regard, Defendants state that Plaintiff has failed to identify a single allegedly false WAC for any of Defendant's drugs. Defendants argue the allegations regarding AWP are also insufficient under Rule 9(B). In short, Defendants argue they cannot determine how Plaintiff claims the prices were false.

The Court agrees and finds that the State has failed to meet Rule 9(B) in this regard. However, again the Court will permit Plaintiff to amend its Complaint. Plaintiff is granted leave to amend to state with specificity the alleged false statements. With respect to Defendants Warrick, Schering-Plough and Shering, this specificity must include the details of their involvement with WAC, the who, what, when, where and why.

c. Who, When

Finally, Defendants claim that Plaintiff has failed to identify the "who" or "when" of the allegedly false statements. The Court believes that Plaintiff has met its burden under Rule 9(B) with respect to this argument of Defendants, except as to Defendants Warrick, Shering-Plough, and Shering. Thus, Defendants' motion as to this element is denied.

3. COUNT II – CONSUMER SALES PRACTICES ACT

Plaintiff claims that Defendants' allegedly deceptive acts and practices caused Ohio Medicare beneficiaries to make excessive co-payments for prescription drugs covered by Medicare in violation of the Ohio Consumer Sales Practices Act, R.C. 1345.02 and 1345.03

("CSPA"). Defendants argue that Plaintiff has failed to state a claim because:

a) Defendants are not "suppliers";

b) There is no allegation of any deceptive advertising or promotion in connection with a consumer transation; and

c) Some claims are barred by the statute of limitations.

a. "<u>Supplier</u>"

R.C. 1345.03 provides that:

> (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

The act defines "supplier" in R.C. 1345.01 as follows:

> (C) "Supplier" means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.

Thus, it is clear that under the terms of the statute, no privity is required between the "supplier" and the consumer. The "supplier" however, must be engaged in the business of effecting or soliciting consumer transactions.

In this case, the alleged consumer transaction is the purchase of drugs from the health care providers, which drugs are manufactured by Defendants. The first question is whether Defendants are "suppliers" under the Act.

Case law establishes that the Act is intended to be remedial and is to be liberally construed in favor of consumers. <u>Estep v. Johnson</u> (10th Dist. 1998), 123 Ohio App. 3d 307 (citing <u>Einhorn v. Ford Motor Co</u>. (1990), 48 Ohio St. 3d 27). However, a defendant must have a connection to the consumer transaction. As stated by the First District Court of Appeals in <u>Garner v. Borcherding Buick</u> (1st Dist. 1992), 84 Ohio App. 3d 61:

> We believe that the Ohio Consumer Sales Practices Act was designed to protect consumers damaged by a supplier's deceptive practices which occur in connection with consumer transactions. See Weaver v.J.C. Penney Co. (1977), 53 Ohio App.2d 165, 6 0.0.3d 270, 372 N.E.2d 633. We hold that a defendant must be engaged in the business of effecting or soliciting consumer transactions, R.C. 134501(C), and that the defendant must have some connection to the consumer transaction in question in order to be liable as a supplier for deceptive practices which violate the Ohio Consumer Sales Practices Act. However, we do not interpret the statutes as requiring privity of contract between the consumer and the defendant.

The Court then determined that whether such a connection between defendant and plaintiff's consumer transaction exists must be determined by the evidence.

In Hahn v. Doe, (10th Dist. 1995), 1995 Ohio App. LEXIS 1057, the Court similarly recognized that while one may be a "supplier" without directly dealing with a consumer, a party must have some connection to the consumer transaction beyond merely being a manufacturer. In Hahn, the Court found no contact between plaintiffs and defendant; plaintiffs received no sales brochures or literature, and saw no advertising.

In Haynes v. George Ballas Buick-GMC Truck, (6th Dist. 1990), 1990 Ohio App. LEXIS 5661, the Court recognized that defendant must have some connection to the consumer transaction. The Court found the definition of "supplier" broad enough to cover the manufacturer of a consumer product who encourages the consumer to buy the product by advertising and other incentives.

Taking the allegations of the Complaint as true, Plaintiff has stated a connection between Defendants and the consumer transaction.

b. Deceptive Advertising in Connection with Consumer Transaction

Defendants argue that they cannot be liable because they did not make any representations directly to consumers. As discussed above, privity is not required. What is required is that Defendants have some connection to the consumer transaction. For the reasons

discussed above, the Court finds that Plaintiff has adequately pled a claim.

c. Statute of Limitations

Defendants argue in a footnote that some of their claims are barred by the statue of limitations. Plaintiff argues that it alleges that Defendants are engaged in a continuing violation, and thus the cause of action under CSPA does not accrue until the conduct ceases. The Court agrees. See, Roelle v. Orkin Exterminating Co. (10th Dist. 2000), 2000 Ohio App. LEXIS 5141.

4. COUNT III - OHIO DECEPTIVE TRADE PRACTICES ACT

Plaintiff alleges in Count III that Defendants have violated the Deceptive Trade Practices Act. R.C.4165.02(A)(12) provides:

> (A) A person engages in a deceptive practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
>
> (12) Makes false statements of fact concerning the reasons for, existence of, or amounts of price reductions.

In Diamond Co. v. Gentry Acquisition Corp., Inc. (1988), 48 Ohio Misc.2d 1,6, 531 N.E.2d 777, the plaintiff alleged that the defendant, a clothing retailer, violated Section 4165.02(J) of the DTPA (which was re-designated as R.C. 4165.02(A)(12) in 1998) by advertising fictitious reasons for the low prices of its clothing. Defendants argue in this case that Plaintiff makes no assertion that Defendants made false statements regarding the reasons for or amounts of reductions in their prices for any of their drugs. Rather, Plaintiff's Complaint rests on its assertion that Defendants allegedly reported *higher* than actual prices for their drugs, not that they reduced their prices and failed to disclose the true purposes for doing so. Thus, Defendant claims that Plaintiff has alleged no conduct by Defendants that could constitute a violation of the DTPA.

Plaintiff claims that this is too narrow a reading of the statute and that it has stated a

claim under the statute.

Taking the allegations of the Complaint as true, the Court finds that Plaintiff has stated a Claim under the Ohio Deceptive Trade Practices Act. The statute prohibits the making of a false statement concerning the existence of a price reduction. Broadly read, Plaintiff has stated a claim. Therefore, the motion to dismiss this Count is denied.

5. COUNTS IV AND VI – MEDICAID FRAUD AND ANTI-KICKBACK

Plaintiff alleges Defendants violated the Medicaid Fraud and Anti-Kickback Statutes. Defendants argue that these statutes are criminal statutes and provide no basis for civil liability. The Court agrees.

Plaintiffs have cited no cases which would impose civil liability for violations of these statutes. Further, Plaintiff's reliance on R.C.2307.60(A) and 2921.13 does not change the result.

Under Ohio law, a violation of a criminal statute does not give rise to a claim for civil damages. As the court held in Biomedical Innovations v. McLaughlin (10th App. Dist. 1995), 103 Ohio App. 3d 122, 126, "[a]ppellant's claim for civil damages was inappropriate because it was based upon an alleged violation of a criminal statute under which criminal penalties result." In Brunson v. City of Dayton, 163 F. Supp. 2d 919, 928 (S. Dist. Ohio 2001), the court agreed with the argument of Defendants that "civil actions cannot be predicated upon an alleged violation of a criminal statute." Similarly, in Stone V. Holzberger, 807 F. Supp. 1325, 1345 (S.D. Ohio 1992) ("There is no automatic civil liability for violation of a criminal statute"), aff'd 23 F.3d 408 (6th Cir. 1994); and Culberson v. Doan, 125 F. Supp. 2d 252, 280 (S.D. Ohio 2000). ("Plaintiffs have no standing to assert a state criminal statute as a civil tort in their lawsuit."), the courts rejected the arguments of Plaintiffs that violation of a criminal statute gave rise to a civil cause of action.

The Ohio General Assembly "may impose both criminal penalties and civil remedies in respect to the same act or omission." Ohio Department of Natural Resources v. Prescott (1989), 42 Ohio St 3d 65,68. However, Ohio Revised Code 2307.60 does not create a civil cause of action for violation of a criminal statute. As the court held in Stockdale v. Baba (10th App. Dist. 2003), 153 Ohio App. 3d 712,740, 2003-Ohio-4366, "R.C. 2307.60 is merely a compilation of the common law in Ohio that a civil action is not merged in a criminal prosecution which arose from the same act or acts." In other words, Section 2307.60 simply prevents a merger of any civil action to a criminal prosecution and does not independently create a civil action.

No civil cause of action exists, and therefore the Court grants Defendants' motion to dismiss these claims.

6. COUNT V – UNJUST ENRICHMENT

Plaintiff claims Defendants were unjustly enriched. Defendants did not directly receive any payments; payments were made to healthcare providers. Plaintiff claims the benefit Defendants received were increased sales and market shares, and thus increased profits. Defendants argue these are only incidental benefits and cannot form the basis of a claim for unjust enrichment.

Plaintiff argues that Defendants need not obtain payment directly from Plaintiff in order to recover. Plaintiff relies on Pioneer Bank v. Flynn (Sept 9, 1981), Butler App. No. CA79-04-0039, 1981 WL 5198. In that case, the Court held that the application of the doctrine of unjust enrichment "does not require privity between the parties."

Defendants argue that while Ohio law does not require privity, it does require more than an indirect benefit. See Directory Services Group v. Staff Builders International (8th Dist. 2001) 2001 WL 792715. Defendants argue that in this case, Plaintiff has alleged only an incidental

benefit. The Court disagrees. The Complaint states that "Defendants knowingly and intentionally created a 'spread' to increase their sales and market share of these drugs, thereby increasing their profits." (Complaint ¶ 21). Although the benefit conferred was not directly between the parties in this action, it has been pled by the Plaintiff that it was intentional and resulted in an indirect benefit- increased profits to Defendants. Taking the allegations of the complaint as true, Plaintiff has stated a claim for unjust enrichment. Therefore, the motion to dismiss this claim is denied.

## CONCLUSION

For the reasons discussed above, the Court grants Defendants' Motion to Dismiss Counts IV and V and denies the Motion with respect to Counts I, II, III and VI. The Court further finds that Plaintiff has failed to meet the requirements of Rule 9(b) in certain respects and permits Plaintiff to file an amended complaint.

The parties are referred to Local Rule 17 for preparation of an entry.

ENTER
JUN 1 3 2005
BETH A. MYERS, JUDGE

Judge Beth A. Myers

Copies by fax and mail:

Stanley M. Chesley, Esq.
Waite, Schneider, Bayless & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45402
Fax: (513) 621-0262

Michael R. Barrett, Esq.
Barrett & Weber, L.P.A.
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, OH 45202
Fax: (513) 721-2120

James E. Swaim, Esq.
Flanagan, Lieberman, Hoffman & Swaim
318 West Fourth Street
Dayton, OH 45402
Fax: (937) 223-3335

C. David Ewing, Esq.
Gardner, Ewing & Souza
1600 Meidinger Tower
462 South Fourth Avenue
Louisville, KY 40202
Fax: (502) 585-5858

W. B. Markovits, Esq.
Markovits & Greiwe Co., L.P.A.
119 East Court Street, Suite 500
Cincinnati, OH 45202
Fax: (513) 621-7086

James E. Burke, Esq.
Keating Muething & Klekamp
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202
Fax: (513) 579-6457

Shawn J. Organ, Esq.
Kasey T. Ingram, Esq.
Jones Day
41 South High Street, Suite 1900
Columbus, OH 43215-6113
Fax: (614) 469-3939

Earle Jay Maiman, Esq.
Thompson Hine
312 Walnut Street, Suite 1400
Cincinnati, OH 45202-4029
Fax: (513) 241-4771

Robert A. Pitcairn, Jr., Esq.
Katz Teller Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, OH 45202
Fax: (513) 762-0077

EXHIBIT
B2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS, Plaintiff, | |
| v. | CIVIL ACTION NO. 03-11865-PBS |
| MYLAN LABORATORIES, et al., Defendants. | |

**MEMORANDUM AND ORDER**

April 5, 2005

Saris, U.S.D.J.

Defendant pharmaceutical manufacturers filed a consolidated motion to dismiss the Complaint, backed by a consolidated memorandum and four individual memoranda, by Par Pharmaceutical, Inc., Warrick Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and Teva Pharmaceuticals USA, Inc. The Court addressed the cross-cutting issues raised by the consolidated memorandum in Massachusetts v. Mylan Labs., __ F. Supp. 2d __ (D. Mass. February 4, 2005). Now I address the individual motions and the issues raised in the consolidated memorandum relating to Fed. R. Civ. P. 9(b).[1]

---

[1] The Court recently addressed the requirements for Rule 9(b) in In re Pharm. Indus. Average Wholesale Price Litig., 321 F. Supp. 2d 187, 207-08 (D. Mass. 2004) and in In re Pharm. Indus. Average Wholesale Price Litig., No. 01-12257, 2004 WL 2387125, at *1 - *3 (D. Mass. Oct. 26, 2004).

(1) The Court dismisses without prejudice the Best Prices claims against those drugs for which the AMP is listed as $0.

(2) In the consolidated reply, Defendants point out that Massachusetts has failed to state whether AWP or WAC was communicated for each drug, and to whom it was communicated. Warrick and Par argue that they never stated WACs to anyone, and Par further argues that First Data Bank never published a WAC for its drugs. Massachusetts responds that Defendants released either WACs, or AWPs from which WACs were calculated. (See ¶ 30.) However, Massachusetts provides no other details about how or by whom the allegedly fraudulent WACs were calculated if the Defendant did not state WACs. Thus, the Complaint is not sufficient to meet the requirements that Massachusetts plead the "time, place, and content of the alleged false or fraudulent representations." United States *ex rel.* Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004). The Complaint may be amended to state, drug-by-drug, the allegedly false representations. Absent amendment, it will be dismissed for failure to comply with Fed. R. Civ. P. 9(b).

(3) Pointing to Exhibit FF, Teva argues that Massachusetts has not explained how it separated its dispensing fees from its overall reimbursements in its revised exhibits to the Complaint in order to show the discrepancy between WACs and AMPs. Any amendment shall state with particularity the methods by which the

data in the exhibits were derived.

(4) The remainder of the arguments were either addressed in the decision issued on February 4, 2005 or without merit.

(5) The Commonwealth shall file any amended complaint and/or amended exhibits to the Complaint in thirty (30) days or the Complaint will be dismissed. Any additional motions to dismiss shall be filed within two weeks of the filing of an amended complaint, and will be limited to three pages apiece addressing only issues raised by any amendments in response to this Order. The government's opposition will be limited to three pages per Defendant. No reply or sur-reply shall be filed.

S/PATTI B. SARIS
United States District Judge

EXHIBIT
B3

ESERVED
04/08/05
06:02 PM ET
AWP-MDL No 1456

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

**THIS DOCUMENT RELATES TO:**

County of Suffolk v. Abbott Laboratories, et al.
Civ. Action No. 1:03-cv-10643

**MDL NO. 1456**
**CIVIL ACTION NO. 01-12257-PBS**

**MEMORANDUM AND ORDER**

April 8, 2005

Saris, U.S.D.J.

In ruling on the Defendants' motions to dismiss, the Court required Suffolk to present more particular information about its allegation that the published Average Wholesale Price ("AWP") for each drug was fraudulent. Specifically, Suffolk was asked to provide its basis for calculating a spread between the published AWP and the actual average price at which the drug is sold by wholesalers. See In re Pharm. Indus. Average Wholesale Price Litig., No. 01-12257, 2004 WL 2387125, at *2 (D. Mass. Oct. 26, 2004).

Suffolk presented the affidavit of Aaron Hovan, an associate at Kirby McInerney & Squire LLP, who explained that his technique for calculating the spread was to compare the published AWP with what he calculated as an actual average wholesale price for each drug. He first obtained a sampling of retail prices from four

ESERVED
04/08/05
06:02 PM ET
AWP-MDL No. 1456

online drug stores. Relying on a statement in an article comparing the Canadian and American drug systems, he assumed that retail prices for American drugs are on average 1.27 times their wholesale prices. See John R. Graham & Beverly A. Robson, Prescription Drug Prices in Canada and the United States - Part 1: A Comparative Survey, n.1, at http://oldfraser.lexi.net/publications/pps/42/s7_notes.html#FN_03 (last modified Aug. 23, 2000). He confirmed the reasonableness of this ratio with several of Suffolk's industry experts. He then used this average difference between actual wholesale and retail prices to obtain the estimated actual sale prices found in the Complaint. Suffolk compared this "actual sale price" to AWP minus 10%, the rate contained in New York's reimbursement formula, to obtain the alleged spread.

This method is not sufficient to plead allegations of fraud with particularity. In light of the fact that there are approximately 60,000 prescription drugs in the United States, the use of the purported average difference between wholesale and retail, 1.27, to calculate the actual wholesale prices for each drug is inadequate.

ESERVED 04/08/05 06:02 PM ET AWP MDL No. 1456

**ORDER**

The motion to dismiss the remaining AWP claims against the "Suffolk 13" and Defendants Amgen, Inc., Chiron Corporation, Fujisawa Pharmaceutical Company, Ltd., Johnson & Johnson, Warrick Pharmaceuticals, and Wyeth for failure to comply with Rule 9(b) is **ALLOWED**.

S/PATTI B. SARIS
United States District Judge

EXHIBIT

B4



LEXSEE 2004 ALA. LEXIS 205

**Donald Stewart and Radiology Associates, P.C. v. Stephen K. Brinley et al.**

**1020925**

**SUPREME COURT OF ALABAMA**

***2004 Ala. LEXIS 205***

**August 20, 2004, Released**

**SUBSEQUENT HISTORY:** Released for Publication April 28, 2005. Rehearing denied by *Stewart v. Brinley, 2004 Ala. LEXIS 599 (Ala., Dec. 10, 2004)*

**PRIOR HISTORY:** [*1] Appeal from Lauderdale Circuit Court. (CV-2001-432). *Johnson v. Stewart, 854 So. 2d 544, 2002 Ala. LEXIS 315 (Ala., 2002)*

**DISPOSITION:** AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Appellants: Frank B. Potts and Debra H. Coble of Potts & Young Attorneys, LLP, Florence. For Appellees: G. Rick Hall and Charles J. Kelley of Almon, McAlister, Baccus, Hall, Kelley & Tassin, L.L.C., Tuscumbia; and Phillip W. McCallum and James M. Terrell of McCallum & Methvin, P.C., Birmingham.

**JUDGES:** JOHNSTONE, Justice. Nabers, C.J., and Houston, Lyons, and Woodall, JJ., concur.

**OPINIONBY:** JOHNSTONE

**OPINION:**

**JOHNSTONE, Justice.**

Plaintiffs Dr. Donald Stewart and his wholly-owned professional corporation Radiology Associates, P.C., appeal the Rule 54(b), Ala. R. Civ. P., partial summary judgment entered in favor of defendants Dr. Stephen K. Brinley, his wholly-owned professional corporation Quad-Cities Diagnostic Imaging, P.C., and his partly-owned professional corporation Florence MRI Diagnostic Center, P.C., on the plaintiffs' breach of contract and fraud claims. The defendants-appellees won their summary judgment on the theory that the plaintiffs-appellants' participation in prior multi-party litigation barred them, under the doctrines of res judicata and collateral estoppel, from suing the defendants-appellees in the current litigation. We affirm in part, reverse in part, and remand because, at no time during the pleading stage of the prior litigation, were the current plaintiffs-appellants or their privies opposed to any of the current defendants-appellees or their [*2] privies except Florence MRI.

Procedural Facts

On July 5, 2001 in the Lauderdale County Circuit Court, Stewart and his P.C. Radiology Associates sued Brinley, his P.C. Quad-Cities, and Florence MRI for breach of contract and fraud relating to a July 1, 1991 general partnership agreement entered by three professional corporations wholly owned by Stewart, Brinley, and Dr. Donald L. Johnson respectively to form the Lauderdale Radiology Group. Specifically, the plaintiffs alleged, in pertinent part:

> "14. Dr. Donald Johnson, in conjunction with Dr. Brinley, and their respective professional corporations, which comprised two-thirds of the Lauderdale Radiology Group partnership, arbitrarily decided, conspired, and colluded with one another to set the professional component reimbursement rate, on at least two occasions, to a lower amount than was required by paragraph 7.10 of the Partnership Agreement.
>
> "15. Dr. Johnson and Dr. Brinley arbitrarily set the professional component reimbursement rate that Florence MRI was to pay Lauderdale Radiology at $125 per reading, and thereafter said professional component reimbursement rate was again lowered to $100. As a result thereof, Dr. [*3] Stewart and his professional corporation, Radiology Associates, P.C., have been caused to lose substantial income."

All three defendants moved to dismiss the complaint on the ground that the doctrines of res judicata and collat-

eral estoppel barred the plaintiffs' claims. The defendants submitted evidentiary materials in support of their motions to dismiss. On October 16, 2001, in an order, the trial court told that parties that the court intended to treat the motions to dismiss as motions for summary judgment and scheduled a hearing on the motions for November 14, 2001. On November 13, 2001, the plaintiffs opposed the summary judgment motions.

On August 29, 2002, the defendants submitted additional evidentiary materials supporting their summary judgment motions. On November 12, 2002, the plaintiffs amended their complaint to assert a claim for unjust enrichment. On January 24, 2003, the trial court entered summary judgment in favor of the defendants on the plaintiffs' claims for breach of contract and fraud, but not on the claim for unjust enrichment. The trial court made the summary judgment final and appealable pursuant to Rule 54(b), Ala. R. Civ. P. Only the Rule 54(b) [*4] partial summary judgment in favor of the defendants on the plaintiffs' claims for breach of contract and fraud has been properly appealed to us.

Substantive Facts

Lauderdale Radiology Group was a general partnership "comprised of Florence Radiology Associates, P.C., Quad-Cities Diagnostic Imaging, P.C., and Radiology Associates, P.C." Florence Radiology Associates, P.C., was a professional corporation formed and owned by Johnson. Quad-Cities Diagnostic Imaging, P.C., was a professional corporation formed and owned by Brinley. Radiology Associates, P.C., was a professional corporation formed and owned by Stewart. Florence MRI Diagnostic, P.C., was a professional corporation formed and owned by Brinley and Johnson. Surveillance Technologies, Inc., was a corporation formed and owned by Charles E. Fredrick.

On October 28, 1997, in the Jefferson County Circuit Court, Stewart, his wife, and Brinley, all represented by the same counsel, sued Johnson, his P.C. Florence Radiology Associates, Surveillance Technologies, Fredrick, and David L. Bosham, an independent investigator, for invasion of privacy, outrageous conduct, and injunctive relief.

On October 14, 1998, defendants Johnson [*5] and his P.C. Florence Radiology Associates filed a counterclaim, and Florence MRI (Brinley and Johnson's P.C.) and Lauderdale Radiology Group (the general partnership of Johnson's, Brinley's, and Stewart's respective P.C.'s), all represented by Johnson's counsel, called themselves "counterclaimants" also, entered the litigation, and asserted claims, against the Stewarts, Stewart's P.C. Radiology Associates, Brinley, and his P.C. Quad-Cities for breach of fiduciary duty, breach of the 1991 Lauderdale Radiology Group general partnership agreement, defamation, and invasion of privacy. (These counterclaims and allied claims by new litigants will, for convenience, be called "the first counterclaims" even though some are not really counterclaims). The gravamen of the first counterclaims was that Stewart and Brinley breached duties owed under the 1991 Lauderdale Radiology Group general partnership agreement and that their breach caused damage to the defendants-counterclaimants. Johnson, individually, counterclaimed against Stewart, individually, for assault and battery. On November 16, 1998, the Stewarts and Brinley, represented by the same counsel, moved to dismiss the first counterclaims. [*6] On February 8, 1999, the trial court denied the motion to dismiss.

On May 6, 1999, Stewart, as an individual, as a shareholder in his P.C. Radiology Associates, and as a "partner" (actually his P.C. Radiology Associates, not he himself, was the partner) in Lauderdale Radiology Group, and Radiology Associates itself, all represented by Brinley and Stewart's counsel, amended their claims against Johnson to include a claim for fraudulent suppression and a claim for conversion of funds belonging to the general partnership Lauderdale Radiology Group.

On May 12, 1999, Stewart and his P.C. Radiology Associates, represented by Brinley and Stewart's counsel, amended their claims to allege that the defendants-counterclaimants, represented by Johnson's counsel, had breached paragraphs 7.4, 12, and 15 of the 1991 Lauderdale Radiology Group general partnership agreement. Paragraph 7.4 of the partnership agreement reads, in pertinent part: "No Partner shall do any act detrimental to the best interest of the Partnership which would make it impossible to carry on the ordinary business of the Partnership." Paragraph 12 of the partnership agreement identified the events that would precipitate termination [*7] of the partnership. Paragraph 15 identified the manner of dissolution and liquidation of the partnership. Stewart and his P.C. Radiology Associates, represented by Brinley and Stewart's counsel, specifically alleged that the defendants-counterclaimants, represented by Johnson's counsel, had breached the 1991 Lauderdale Radiology Group general partnership agreement and their fiduciary duties owed under that agreement by, among other ways, attempting to circumvent the "buy-out" provisions of the partnership agreement, withdrawing $2,500 of funds belonging to Lauderdale Radiology Group for Johnson's personal use, and wrongfully attempting to dissolve Lauderdale Radiology Group.

On or about May 13, 1999, the defendants-counterclaimants, represented by Johnson's counsel,

amended their counterclaims to allege that the plaintiffs, represented by Brinley and Stewart's counsel, had converted $400,000 belonging to the general partnership Lauderdale Radiology Group, had breached their fiduciary duties to the Lauderdale Radiology Group by failing and refusing to fulfill their obligations under the 1991 Lauderdale Radiology Group general partnership agreement to perform certain services to patients [*8] of Florence MRI (Johnson and Brinley's P.C.) and the general partnership Lauderdale Radiology Group, and had taken concerted action to divert business from Johnson and to harm Lauderdale Radiology Group and Florence MRI. Johnson, individually, asserted an invasion of privacy claim against the plaintiffs. Johnson, individually, asserted a claim for assault and battery against Stewart, individually. The plaintiffs, represented by Brinley and Stewart's counsel, denied the allegations of the amended counterclaims.

Thereafter, the defendants-counterclaimants, represented by Johnson's counsel, moved for a summary judgment and submitted a narrative statement of the undisputed facts. On October 2, 2000, the plaintiffs, represented by Brinley and Stewart's counsel, filed a statement in opposition to the narrative statement of undisputed facts filed by the defendants-counterclaimants, represented by Johnson's counsel. The statement of the plaintiffs, represented by Brinley and Stewart's counsel, said that the defendants-counterclaimants, represented by Johnson's counsel, had breached paragraph 7.4 of the 1991 Lauderdale Radiology Group general partnership agreement by paying Stewart's P.C. [*9] Radiology Associates less the full value of its share in the Lauderdale Radiology Group when the defendants-counterclaimants bought-out that partnership interest in Lauderdale Radiology Group.

Brinley settled his claims against Johnson and his P.C. Florence Radiology Associates. The defendants-counterclaimants settled their counterclaims against Brinley and his P.C. Quad-Cities.

On February 14, 2001, plaintiffs Stewart, Stewart's wife, and Radiology Associates, represented by Brinley and Stewart's counsel, moved for leave to amend their complaint to allege a breach of paragraph 7.10 of the 1991 Lauderdale Radiology Group general partnership agreement by the defendants, and to allege fraud, collusion, and conspiracy among Johnson, his P.C. Florence Radiology Associates, Brinley, and his P.C. Quad-Cities. Specifically, the plaintiffs, represented by Brinley and Stewart's counsel, alleged, in pertinent part:

> "Donald Johnson, as managing partner of Lauderdale Radiology Group, in conjunction with Steve Brinley, and their respective professional corporations which comprise two-thirds of the Lauderdale Radiology Group partnership, arbitrarily decided, conspired, and colluded with [*10] one another to arbitrarily set the professional component reimbursement rate, on at least two occasions, to a lower amount than was required by Paragraph 7.10 of the Lauderdale Radiology Group General Partnership Agreement. That General Partnership Agreement provided:
>
> "'7.10: The Partnership will enter into contracts with Florence M.R.I. Diagnostic Imaging, P.C. (hereinafter "Florence M.R.I.") for the performance of all radiological services needed by Florence M.R.I. The compensation to be paid to the Partnership **shall be equal to 80% of the Blue Cross Blue Shield professional component reimbursement rate on January 1 of each year and shall be adjusted annually.**'
>
> "Plaintiffs allege that Dr. Johnson, with the consent and approval of Dr. Brinley, arbitrarily set the professional component reimbursement rate that Florence M.R.I. was to pay Lauderdale Radiology Group at $125.00 per reading, and thereafter lowered said professional component rate to $100.00. As a result thereof, the Plaintiff, Donald Stewart, and his professional corporation, Radiology Associates, P.C., have been caused to lose substantial income." (Boldface type in complaint.)

The proposed amendment [*11] did not seek to add either Brinley or his P.C. Quad-Cities as a party defendant. Thereafter, on April 4, 2001, to effectuate the settlement of the claims by plaintiff Brinley against the defendants and the counterclaims by the defendants-counterclaimants against Brinley and his P.C. Quad-Cities, the trial court entered an order dismissing those settled claims.

At the beginning of the trial, on April 9, 2001, the trial court disallowed the February 14, 2001 amendment filed by Brinley and Stewart's counsel on behalf of Stewart, his wife, and Radiology Associates on the ground that those plaintiffs had not filed that amendment to the complaint within the time allowed by the pretrial order. The record does not reveal when the time to file amendments had expired.

At trial, those remaining plaintiffs' counsel, who had

represented Brinley as well as Stewart, elicited testimony from Stewart that Johnson and Brinley had breached the 1991 Lauderdale Radiology Group general partnership agreement by causing Florence MRI (Johnson and Brinley's P.C.) to pay the general partnership Lauderdale Radiology Group less than 80% of the "professional component rate" as required by the 1991 Lauderdale Radiology [*12] Group general partnership agreement. When the defendants-counterclaimants objected to this testimony as irrelevant to the issues at trial, the plaintiffs' counsel argued that

> "this is part and parcel, and it's part of the contract claims from the beginning, I won't rehash all my arguments that we did yesterday, but we had a breach of contract claim in this case for a long, long time. And this is part of the breach of the contract."

The trial court ruled that the plaintiffs' counsel could question Stewart about how Johnson and Brinley had cheated Stewart out of money by causing their P.C. Florence MRI to pay the general partnership Lauderdale Radiology Group less than 80% of the "professional component rate" "under paragraph 7.4 of the partnership agreement." Stewart also testified that the 1991 Lauderdale Radiology Group general partnership agreement was terminated after he refused to comply with the demands of Brinley and Johnson to drop his lawsuit against Johnson.

The jury returned a verdict in favor of plaintiffs Stewart and his wife and awarded each of them $1 in compensatory damages and $1,000,000 in punitive damages. n1 *Johnson v. Stewart, 854 So. 2d 544 (Ala. 2002).* [*13] Apparently the jury found in favor of the plaintiffs Stewart, his wife, and Radiology Associates on the defendants-counterclaimants' counterclaims.

> n1 The record is silent whether the jury returned a verdict for, or against, plaintiff Radiology Associates.

Defendants Johnson and his P.C. Florence Radiology Associates moved for a judgment as a matter of law or, in the alternative, for a new trial, or for remittitur of the punitive damages. The trial court remitted Stewart's punitive damage award to $500,000 and remitted his wife's punitive damage award to $350,000. The Stewarts accepted the remittiturs. The trial court denied all other relief requested by the defendants. Defendant Johnson appealed. Defendant Florence Radiology Associates did not appeal. *Stewart, 854 So. 2d at 546.*

On appeal, this Court held that Johnson was entitled to a JML on the Stewarts' invasion of privacy claim. This Court reversed the judgment of the trial court and remanded the case for entry of a judgment consistent [*14] with our opinion. Our opinion does not mention any claim by the plaintiffs other than their invasion of privacy claim. *Stewart, supra.*

Issue

In this appeal, plaintiffs Stewart and his P.C. Radiology Associates raise one issue: whether their claims against Brinley, his P.C. Quad-Cities, and Florence MRI (Johnson and Brinley's P.C.) are barred by res judicata or collateral estoppel.

Standard of Review

> "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P., and *Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So. 2d 425 (Ala. 1999).* The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. *System Dynamics Int'l, Inc. v. Boykin, 683 So. 2d 419 (Ala. 1996).* 'Where the evidence is in conflict, the issue must [be tried to the fact-finder].' *Kitchens v. Winn-Dixie Montgomery, Inc., 456 So. 2d 45, 47 (Ala. 1984).* In reviewing a summary judgment, an appellate court, [*15] de novo, applies the same standard as the trial court. *Dobbs, supra.*"

*Bruce v. Cole, 854 So. 2d 47, 54 (Ala. 2003).*

The party moving for summary judgment bears "'the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment.'" *Ex parte General Motors Corp., 769 So. 2d 903, 909 (Ala. 1999)* (quoting *Berner v. Caldwell, 543 So. 2d 686, 691 (Ala. 1989)* (Houston, J., concurring specially)).

> "'The manner in which the movant's burden of production is met depends upon which party has the burden of proof ... at trial. If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. ("pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits"). The movant's proof must be such that he would be entitled to a [judgment as a

> matter of law] if this evidence was not controverted at trial.'"

*Ex parte General Motors, 769 So. 2d at 909* (quoting *Berner, 543 So. 2d at 691* (Houston, [*16] J., concurring specially)). "In other words, 'when the movant has the burden [of proof at trial], its own submissions in support of the motion must entitle it to judgment as a matter of law.'" *Denmark v. Mercantile Stores Co., 844 So. 2d 1189, 1195 (Ala. 2002)* (quoting *Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir. 1998))*. Otherwise, the burden of production does not shift to the nonmovant, and the movant cannot prevail on the motion. See *Ex parte General Motors, supra.*

Law

Axiomatically, res judicata and collateral estoppel operate only between parties (and their respective privies) who or which have already opposed each other in at least one claim that has been litigated to a judgment. If neither a party nor any of that party's privies has litigated at least one claim to a judgment against another party nor any of the other party's privies, neither res judicata and collateral estoppel can bar either of those parties or any of that party's privies from suing the other party or any of the other's privies. See *Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So. 2d 507, 520 (Ala. 2002)*, [*17] *Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, 821 So. 2d 158, 165 (Ala. 2001)*, *Equity Res. Mgmt., Inc. v. Vinson, 723 So. 2d 634 (Ala. 1998)*, and *Hughes v. Martin, 533 So. 2d 188 (Ala. 1988).*

> "The essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation. *Dairyland Ins. Co. v. Jackson, 566 So. 2d 723, 725-26 (Ala. 1990).*"

*Equity Res. Mgmt., 723 So. 2d at 636.* "If these essential elements are met, any issue that was, or could have been, adjudicated in the prior action is barred from further litigation." *Hughes, 533 So. 2d at 190.*

"Rule 13(a), Ala. R. Civ. P., and *Rule 13(a), Fed. R. Civ. P.*, provide:

> "'A pleading shall state as a counterclaim any claim which at the time of serving [*18] the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.'

"(Emphasis added.) The purpose of Rule 13 'is to avoid circuity of actions and to enable the court to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence.' *Grow Group, Inc. v. Industrial Corrosion Control, Inc., 601 So. 2d 934, 936 (Ala. 1992)*, citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1409 (2d ed. 1990). To effect the purpose of Rule 13, the consequence for failing to assert a compulsory counterclaim is a bar against the assertion of that claim in any other action. See *Brooks v. Peoples Nat'l Bank of Huntsville, 414 So. 2d 917, 920 (Ala. 1982)*; *Owens v. Blue Tee Corp., 177 F.R.D. 673, 682 (M.D. Ala. 1998).*

"The drafters of Rule 13, Ala. R. Civ. P., intended to adopt the 'logical [*19] relationship' test for determining whether a counterclaim is compulsory. 'A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim.' Committee Comments on 1973 Adoption of Rule 13, P 6. Under the logical-relationship standard, a counterclaim is compulsory if '(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts.' *Ex parte Canal Ins. Co., 534 So. 2d 582, 584 (Ala. 1988)* (quoting *Brooks v. Peoples Nat'l Bank of Huntsville, 414 So. 2d 917, 919 (Ala. 1982))*. In determining whether the claims 'arose out of the same core of operative facts,' this Court must determine whether '(1) the facts taken as a whole serve as the basis for both claims or (2) the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant.' *Canal Ins., 534 So. 2d at 584.*"

*Ex parte Cincinnati Ins. Cos., 806 So. 2d 376, 379-80 (Ala. 2001)* (second and third emphasis added). "Basically, [*20] [the logical-relation test] allows a court to apply Rule 13(a) to any counterclaim which should have been tried with the original claim in order to avoid a substantial duplication of effort." *Ex parte Reliance Ins. Co., 404 So. 2d 610, 612 (Ala. 1981).*

"For the doctrine of collateral estoppel to apply, the following elements must be established:

> ""'(1) that an issue in a prior action was

identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions."

"'*Smith v. Union Bank & Trust Co., 653 So. 2d 933, 934 (Ala. 1995)*. "'Where these elements are present, the parties are barred from relitigating issues actually litigated in a prior [action].'" *Smith, 653 So. 2d at 934* (quoting *Lott v. Toomey, 477 So. 2d 316, 319 (Ala. 1985)).*'

"*Biles v. Sullivan, 793 So. 2d 708, 712 (Ala. 2000)*. 'Only issues actually decided in a former action are subject to collateral estoppel.' *Leverette ex rel. Gilmore v. Leverette, 479 So. 2d 1229, 1237 (Ala. 1985)* [*21] (emphasis added). The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication. See *Adams v. Sanders, 811 So. 2d 542, 545 (Ala. Civ. App. 2001)* ('Because we have no transcript of the trial in the district court, the burden is on Sanders to show that the district court determined that he was not negligent.'). See also *United States v. Cala, 521 F.2d 605, 608 (2d Cir. 1975)* ('The burden ... is on [the one asserting collateral estoppel] to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict.')."

*Lee L. Saad Constr. Co., 851 So. 2d at 520.*

"Ordinarily, '[a] party to the second suit will not be [barred by res judicata or collateral estoppel] from relitigating an issue unless all of the requisite elements exist. It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement.' *McMillian v. Johnson, 878 F. Supp. 1473, 1520 (M.D. Ala. 1995)*, [*22] rev'd in part on other grounds, *88 F.3d 1554 (11th Cir. 1996)*, cert. denied, *521 U.S. 1121* ... (1997). 'An exception is made to this requirement for parties in privity with a party to the prior action.' Id. (emphasis added). Thus, regardless of the fact that the PC was not a named party in [*Baker v. Bennett (No. 1940172), 667 So. 2d 743 (Ala. 1995)* (table) (affirming without opinion circuit case no. CV-94-0529 on May 26, 1995)], it will be bound by that judgment if it was in privity with Baker.

"'"The term 'privity' has not been uniformly defined with respect to [res judicata and collateral estoppel]."' *Hughes v. Martin, 533 So. 2d 188, 191 (Ala. 1988)* (quoting Issue Preclusion in Alabama, *32 Ala. L. Rev. 500, 520-21 (1981)*). Privity is often deemed, however, to arise from "'(1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; [or] (3) an identity of interest in the subject matter of litigation."' Id. Thus, the existence of privity has generally been resolved '"on an ad hoc basis in which [*23] the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment."' Id. See also *Dairyland Ins. Co. v. Jackson, 566 So. 2d 723, 726 (Ala. 1990)* (collecting cases)."

*Leon C. Baker, P.C., 821 So. 2d at 165.*

Rule 13, Ala. R. Civ. P., does not require a plaintiff to cross-claim against a co-plaintiff, or a defendant to cross-claim against a co-defendant, in order to avoid a res judicata or collateral estoppel bar. Rather, cross-claims "may either [be] pleaded ... in the original action or reserved ... for later and independent litigation." *AAA Equip. & Rental, Inc. v. Bailey, 384 So. 2d 107, 109* (Ala. 1980). Accord Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated, Rule 13, Author's Comments § 13.13 (3d ed. 1996).

Res judicata and collateral estoppel are affirmative defenses. Rule 8(c), Ala. R. Civ. P. The party asserting an affirmative defense bears the burden of proving it. *Ex parte Ramsay, 829 So. 2d 146 (Ala. 2002).*

Analysis

In the Lauderdale County Circuit Court the defendants-appellees in that action, Brinley, his P.C. Quad-Cities, [*24] and his and Johnson's P.C. Florence MRI, asserted the affirmative defenses of res judicata and collateral estoppel and thereby won summary judgment against the plaintiffs-appellants Stewart and his P.C. Radiology Associates on their claims in that action. The theory of these affirmative defenses in the Lauderdale County litigation was that the claims of Stewart and his P.C. in their Lauderdale County action were barred by the participation of Stewart and his P.C. in the previous Jefferson County litigation. The Lauderdale County action defendants, Brinley, Quad-Cities, and Florence MRI bore the burden of proving these affirmative defenses. *Ex parte Ramsay, supra.*

At no time while the Jefferson County trial court was allowing any of the parties to plead claims in that litigation, did Stewart or his P.C. Radiology Associates plead any claim against Brinley or his P.C. Quad-Cities, nor did Brinley or his P.C. Quad-Cities plead any claim against Stewart or Radiology Associates. While Stewart, his wife, and Radiology Associates did include in their February 14, 2001 proffered amendment allegations critical of Brinley and Quad-Cities, that proffered amendment was filed after [*25] the time for pleading claims had

expired, and accordingly that proffered amendment was disallowed. Moreover, even that proffered amendment did not purport to add Brinley or Quad-Cities as defendants or otherwise to assert any claim against them. Therefore, the proffered February 14, 2001 amendment did not constitute a claim, much less a claim litigated to a judgment, between Stewart, his wife, or Radiology Associates on the one hand and Brinley or Quad-Cities on the other. See *Ex parte Sears, Roebuck & Co., [Ms. 1030572, July 23, 2004] 895 So. 2d 265, 2004 Ala. LEXIS 184 (Ala. 2004).*

The first counterclaims, filed in the Jefferson County litigation on October 14, 1998, did include a "counterclaim" by Florence MRI (Brinley and Johnson's P.C.) against Stewart, his wife, Radiology Associates, Brinley, and Quad-Cities. While Florence MRI was owned by both Brinley and Johnson, it was represented by Johnson's counsel in asserting this counterclaim; Brinley and Quad-Cities were sued by this counterclaim just as Stewart, his wife, and Radiology Associates were; and all of these defendants-in-counterclaim were represented by the same counsel, who was opposed to Johnson's counsel who filed the counterclaim. [*26] Therefore, in this counterclaim, neither Brinley nor Quad-Cities was in privity with the counterclaimant Florence MRI even though Brinley owned part of it. Thus the counterclaim by Florence MRI did not constitute a claim by a party in privity with Brinley or Quad-Cities against Stewart, his wife, or Radiology Associates. The privity, if any existed in this counterclaim, existed, as at all times during the pleading stage of the Jefferson County litigation, among Brinley, Quad-Cities, Stewart, his wife, and Radiology Associates, who or which were all co-plaintiffs and co-defendants-in-counterclaim represented by the same counsel.

Similarly, the first counterclaims included a "counterclaim" by Lauderdale Radiology Group (the general partnership composed of Johnson's, Brinley's, and Stewart's respective P.C.'s) against Stewart, his wife, Radiology Associates, Brinley, and Quad-Cities. For the same reasons the counterclaim by Florence MRI did not constitute a claim by any party in privity with Brinley or Quad-Cities against Stewart, his wife, or Radiology Associates, the counterclaim by Lauderdale Radiology Group did not either. That is, while Brinley owned Quad-Cities, which, in turn, [*27] owned a one-third interest in the counterclaimant Lauderdale Radiology Group, this counterclaimant was represented by Johnson's counsel; Brinley and his P.C. Quad-Cities (a one-third owner of this counterclaimant) were sued by this counterclaim just as Stewart, his wife, and Radiology Associates were; and all of these defendants-in-counterclaim were represented by the same counsel in opposition to the counterclaim. Once again, the privity if any, existed among Brinley, Quad-Cities, Stewart, his wife, and Radiology Associates.

Likewise, the counterclaim by Lauderdale Radiology Group did not constitute a claim by a party in privity with Stewart, his wife, or Radiology Associates against either Brinley or Quad-Cities. While Stewart owned Radiology Associates, which, in turn, owned a one-third interest in the counterclaimant Lauderdale Radiology Group, this counterclaimant was represented by Johnson's counsel; Stewart and his P.C. Radiology Associates (a one-third owner of this counterclaimant) were sued by this counterclaim just as Stewart's wife, Brinley, and Quad-Cities were; and, once again, all of these defendants-in-counterclaim were represented by the same counsel in opposition [*28] to the counterclaim. Thus, still, the privity, if any, existed, not between Stewart or his P.C. Radiology Associates and the counterclaimant Lauderdale Radiology Group, and not between Brinley or his P.C. Quad-Cities and this counterclaimant, but among Stewart, his wife, Radiology Associates, Brinley, and Quad-Cities.

Therefore, at no time during the Jefferson County litigation did Stewart, his wholly-owned P.C. Radiology Associates, or any privy of either Stewart or his P.C. effectively assert, much less litigate to a judgment, any claim against Brinley or his wholly-owned P.C. Quad-Cities. Nor did Brinley or Quad-Cities or any privy of either assert any claim against Stewart or Radiology Associates and thereby confront them with the choice between either asserting a counterclaim or incurring the bar of either res judicata or collateral estoppel. *Ex parte Cincinnati Ins. Cos., supra.* Therefore, in the subsequent Lauderdale County litigation, neither res judicata nor collateral estoppel was a valid defense for Brinley or Quad-Cities.

On the other hand, in the Jefferson County litigation, the "counterclaim" by, among others, Florence MRI against, among others, Stewart [*29] and his P.C. Radiology Associates confronted both of them with the choice of either asserting their claims against Florence MRI as compulsory counterclaims or incurring a res judicata bar to such claims in any subsequent litigation. See *Ex parte Cincinnati Ins. Cos., supra.* Therefore, in the subsequent Lauderdale County litigation, res judicata was a valid defense for Florence MRI.

Conclusion

While the record supports the conclusion that the defense of res judicata entitled the defendant-appellee Florence MRI to judgment as a matter of law, the record does not support the conclusion that either the defense of res judicata or the defense of collateral estoppel entitled either of the defendants-appellees Brinley or Quad-Cities

to judgment as a matter of law. Therefore, the Rule 54(b) partial summary judgment is affirmed insofar as it applies to the claims against Florence MRI but is reversed insofar as it applies to the claims against Brinley and Quad-Cities. This cause is remanded for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Nabers, C.J., and Houston, Lyons, and Woodall, JJ., concur. [*30]