H

United States District Court,
D. Massachusetts.
State of MONTANA, Plaintiff,
v.
ABBOT LABORATORIES, et al., Defendants.
State of Nevada, Plaintiff,
v.
Abbot Laboratories, et al., Defendants.
State of Nevada, Plaintiff,
v.
American Home Products, et al., Defendants.
State of Minnesota, Plaintiff,
v.
Pharmacia Corporation, Defendant.
**CIV.A. Nos. 02-12084-PBS, 02-12085-PBS, 02-12086-PBS, 03-10069-PBS.**

June 11, 2003.

Minnesota, Montana, and Nevada brought state-court actions against various pharmaceutical companies, alleging that defendants violated state law by fraudulently misrepresenting prescription-drug prices. Following removal, plaintiffs moved for remand. The District Court, Saris, J., held that: (1) Minnesota's claims did not give rise to federal question jurisdiction; but (2) Montana and Nevada's claims for breach of contract arose under federal law, and thus removal of their suits was warranted; and (3) failure of all defendants to unanimously consent in a timely fashion to removal precluded removal of Nevada's suit.

Motion granted in part, and denied in part.

West Headnotes

**[1] Removal of Cases 107(7)**
334k107(7) Most Cited Cases
A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction.

**[2] Removal of Cases 2**
334k2 Most Cited Cases

**[2] Removal of Cases 107(7)**
334k107(7) Most Cited Cases
The removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action. 28 U.S.C.A. § 1441.

**[3] Federal Courts 241**
170Bk241 Most Cited Cases

**[3] Federal Courts 246**
170Bk246 Most Cited Cases
The question whether a claim "arises under" federal law, for purposes of federal question jurisdiction, must be determined by reference to the well-pleaded complaint, and thus, a defense that raises a federal question is inadequate to confer federal jurisdiction. 28 U.S.C.A. § 1331.

**[4] Federal Courts 241**
170Bk241 Most Cited Cases
For purposes of federal question jurisdiction, a federal question can arise through a state-law claim requiring resolution of a substantial question of federal law. 28 U.S.C.A. § 1331.

**[5] Removal of Cases 25(1)**
334k25(1) Most Cited Cases
Federal issue involved in state-law claims brought by Minnesota, under its parens patriae authority on behalf of Medicare beneficiaries, against various pharmaceutical companies, alleging that defendants violated state law by fraudulently misrepresenting prescription-drug prices, was not substantial enough to create federal question jurisdiction, and thus, removal of suit to federal court was improper, although claims depended on meaning of "average wholesale price" (AWP) under Medicare, where defendants failed to show that Medicare statute provided a private right of action for AWP misreporting. 28 U.S.C.A. § § 1331, 1441; Social Security Act, § 1842(*o*), as amended, 42 U.S.C.A. § 1395u(*o*).

**[6] Federal Courts 241**
170Bk241 Most Cited Cases
Where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute must provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain. 28 U.S.C.A. § 1331.

**[7] Removal of Cases 25(1)**
334k25(1) Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

PLAINTIFF'S EXHIBIT 1A

Montana's state-law claims for breach of contract against various pharmaceutical companies, alleging that defendants violated federal Medicaid-rebate best-price obligations, arose under federal law, and thus created federal question jurisdiction such that removal of suit to federal court, was proper, where claims required interpretation of contracts with the United States governed by federal common law, and if Montana were to prevail on claims, it could result in substantial changes in Medicaid reimbursements paid out by federal government. 28 U.S.C.A. § § 1331, 1441; Social Security Act, § 1927(a)(1), as amended, 42 U.S.C.A. § 1396r-8(a)(1).

[8] Removal of Cases 82
334k82 Most Cited Cases
As a general matter, in cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition. 28 U.S.C.A. § 1446.

**[9] Removal of Cases 79(1)**
334k79(1) Most Cited Cases

**[9] Removal of Cases 82**
334k82 Most Cited Cases

**[9] Removal of Cases 103**
334k103 Most Cited Cases
Under "rule of unanimity," all defendants must file their notice of removal or consent to removal within 30 days of being served, and failure to do so constitutes defect in removal procedure, which is grounds for remand. 28 U.S.C.A. § 1446(b).

**[10] Removal of Cases 82**
334k82 Most Cited Cases
Under "rule of unanimity," failure of all defendants to unanimously consent to removal in timely fashion precluded removal of Nevada's state-law suit against various pharmaceutical companies, alleging that defendants violated state law by fraudulently misrepresenting prescription-drug prices, even though all defendants faced a removable federal claim for breach of contract, based on their alleged violation of federal Medicaid-rebate best-price obligations, which had been joined with separate and independent non-removable claims. 28 U.S.C.A. § 1441(c); Social Security Act, § 1927(a)(1), as amended, 42 U.S.C.A. § 1396r-8(a)(1).

**[11] Removal of Cases 82**
334k82 Most Cited Cases
In accordance with the general presumption against the exercise of federal jurisdiction, under the rule of unanimity, all defendants to all removable claims must consent to removal, even where statutory provision relating to removal of actions involving separate causes of action is a proper basis for removal. 28 U.S.C.A. § 1441(c).

***251** Frankie Sue Del Papa, Attorney General's Office, Carson City, NV, Michael J. Vanselow, Minnesota Attorney Generals Office, St. Paul, MN, for plaintiffs.

John C. Dodds, Morgan, Lewis & Boskins, LLP, Philadelphia, PA, James Lloyd Volling, Faegre & Benson, Minneapolis, MN, for defendants.

*252 *MEMORANDUM AND ORDER*

SARIS, District Judge.

## INTRODUCTION

Plaintiffs Minnesota, Montana, and Nevada bring these actions against various pharmaceutical companies, alleging the companies violated state law by fraudulently misrepresenting prescription-drug prices. Defendants have removed the suits from state court on the ground that plaintiffs' claims raise federal questions, because they turn on the meaning of "average wholesale price" in the federal Medicare statute, 42 U.S.C. § 1395u(o), or on the meaning of "best price" in Medicaid-rebate contracts between the federal government and each defendant. [FN1] Plaintiffs argue that any federal issues are not substantial enough to confer jurisdiction, and seek remand to state court. After hearing, the Court ***ORDERS*** that *State of Minnesota v. Pharmacia* and *State of Nevada vs. Abbot Laboratories, et al.* be remanded to their respective state courts and that *State of Montana vs. Abbot Laboratories, et al.* and *State of Nevada vs. American Home Products Corp., et al.* remain in federal court.

> FN1. Because plaintiffs are state governments, defendants do not assert diversity jurisdiction as a ground for removal. *See generally* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723, at 595 (3rd ed. 1998) ("[S]ince it is well established that a state is not a 'citizen' of any state, it follows that when a state is the real party in interest, the case cannot be removed on the basis of diversity of citizenship jurisdiction.").

## BACKGROUND

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

This background section draws on the allegations in the complaints; defendants hotly dispute many of these allegations.

**I. Medicare**

Medicare is the federal insurance program that pays for the medical care of persons 65 and older. *See* 42 U.S.C. § § 1395-1395ggg (2003). The Medicare program is administered by the Center for Medicare and Medicaid Services ("CMS"), which is under the authority of the Secretary of Health and Human Services. Medicare Part B establishes an insurance program to pay for physicians' services. *See id.* § § 1395j-1395w. Medicare generally does not cover the cost of prescription drugs that a Medicare beneficiary self-administers (*e.g.*, by swallowing the drug). It does cover some outpatient drugs, including ones that are administered by a doctor, and certain oral anti-cancer drugs. Approximately 450 drugs are covered by Medicare Part B.

Through its Medicare Part B program, the federal government reimburses health-care providers like physicians for up to 80 percent of the allowable cost of certain prescription drugs that they administer directly to patients. The remaining 20 percent is paid by the Medicare Part B beneficiary, as a co-payment. The drug-reimbursement rates are based on "the lower of the actual charge on the Medicare claim for benefits or 95 percent of the national average wholesale price ["AWP"] of the drug or biological." 42 C.F.R. § 405.517(b) (2003). *See also* 42 U.S.C. § 1395u(*o*) ("[T]he amount payable for the drug or biological is equal to 95 percent of the average wholesale price.").

In setting reimbursement rates, the Medicare program uses the AWPs generated by the pharmaceutical industry. There are no regulations describing how AWPs are to be calculated, nor any regulatory process for approving AWPs. Pharmaceutical companies do not report directly to the federal government, but instead *253 send their pricing information to independent publishing companies that compile the data and publish the AWPs in trade publications, which are then used by the government and private health plans. [FN2] The publishing companies do not independently review the figures for accuracy. The figures are not filed with the CMS.

FN2. The major reporting services include First Data Bank (the "Blue Book"), Medical Economics Co., Inc. (the "Red Book"), and Medispan.

Minnesota, Montana, and Nevada all allege that defendant pharmaceutical companies overstate the AWPs of many drugs in the data they provide to the trade publications. This overstatement in AWP reporting creates a "spread" between the actual cost of a drug to a health-care provider, and the reimbursement paid to the provider by the federal government. It also inflates the co-payments made by consumers; indeed, in some instances the co-payment alone exceeds the cost of the drug to the provider. Defendants actively market this spread to providers, who are encouraged to buy drugs from defendants at highly discounted prices and urged to keep the reimbursement and co-payment spreads for themselves. The pharmaceutical companies benefit through higher sales and larger market share.

Defendants exacerbate the AWP spread through certain marketing practices. For example, some defendants provide "free samples" to health providers, who are sometimes encouraged to bill their customers for the samples as they would any other drug. This free-sample scheme lowers the providers' overall costs while not reducing the amount they receive in reimbursements from the federal government or co-payments from consumers, which remain tied to the reported AWPs. Other fraudulent pricing practices include off-invoice pricing, rebates, and grants. All of these incentives are designed to lower the providers' net cost of purchasing the drugs--with a corresponding increase in the AWP spread.

The AWP scheme harms Medicare beneficiaries or their insurers because it artificially inflates the co-payments for drugs subject to an AWP spread, to the financial detriment of individual patients or their insurers.

**II. Medicaid**

The Medicaid program is a federal-state collaboration designed to provide medical care for the poor. *See* 42 U.S.C. § § 1396-1396v (2003). The federal government sets certain broad standards for the program and provides funds to states that elect to participate. Each participating state determines, within the federal guidelines, its own rules for program eligibility and content of medical care; each state then administers its program, and complements the federal funding with state appropriations.

In Minnesota, Montana, and Nevada, the state Medicaid programs include coverage of certain

prescription drugs and use AWP in their drug-reimbursement formulae *See, e.g.*, Minn.Stat. § 256B.0625, subd. 13(c) (2003) (using "average wholesale price" in formula for drug reimbursement). By overstating the AWPs for many of their drugs, defendants cause these state Medicaid programs to overpay physicians for these drugs.

Under the federal Medicaid statute, each defendant must enter into a rebate agreement with the United States Secretary of Health and Human Services. *See* 42 U.S.C. § 1396r-8(a)(1). Every rebate agreement requires compliance with 42 U.S.C. § 1396r-8, which (1) requires each contracting company to report its "best price" for prescription drugs, and to make *254 rebates when necessary, and (2) requires that best price be based on the average manufacturer's price, inclusive of discounts provided to certain purchasers.

Under these rebate agreements with the federal government, each pharmaceutical manufacturer is required to file quarterly reports with CMS identifying particular pricing information by drug. *Id.* § 1396r-8(b)(3). The quarterly report must contain the "manufacturer's best price" for each particular drug. *Id.* This data is used to calculate the rebates that manufacturers must provide state Medicaid programs that purchase their drugs.

Defendants do not report the actual best prices mandated by the rebate agreements, but instead exclude from best-price calculations certain discounts and other inducements offered to physicians to increase use of certain drugs. Defendants' violation of the best-price terms in their contracts with the federal government harms the state Medicaid programs because it lowers the rebate payments to these programs.

**III. Other State Prescription-Drug Programs**

Minnesota, Montana, and Nevada all have other prescription-drug programs that use AWP to set reimbursement rates. Defendants' misreporting of AWPs also harms these programs.

## DISCUSSION

**I. Standard for Removal**

[1][2] A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. *See, e.g.*, *BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir.1997). Furthermore, the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action. *See, e.g.*, *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir.1999).

**II. Analysis of Federal-Question Jurisdiction**

[3] A state-court suit that includes at least one claim "arising under the Constitution, laws, or treaties of the United States" can be removed to federal court. *See* 28 U.S.C. § 1441 (2003) (allowing for removal of suits that fall within the federal district courts' original jurisdiction over federal-question cases); 28 U.S.C. § 1331 (2003) (federal-question statute). "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.' A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (citations omitted); *see also* *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) ("[A] case may not be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.") (citation omitted).

Usually, a federal claim creates the federal question. *See* *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229 ("The 'vast majority' of cases that come within this grant of jurisdiction are covered by Justice Holmes' statement that a 'suit arises under the law that creates the cause of action.' ") (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916)).

[4] But a federal question can arise in other ways, including through a state-law claim "requir[ing] resolution of a substantial question of federal law." *255*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (permitting removal of state suit containing claims that local administrative action violated federal law) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Determining whether a state-law claim houses a substantial question of federal law requires entering what the First Circuit has characterized as a "remarkably tangled corner of the law." *Almond v. Capital Props., Inc.*, 212 F.3d 20, 22 (1st Cir.2000) (analyzing whether a federal question arose out of a state-law claim that turned on the interpretation of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contract with the federal government). The Court will apply this difficult body of precedent to the claims in this case; because each state's claims raise certain distinct issues, the Court will address the suits serially.

### A. Minnesota

[5] Minnesota's complaint includes six state-law claims: consumer fraud, false advertising, fraud on senior citizens and handicapped persons, Medicaid fraud, common-law fraud, and unjust enrichment. All of these claims are grounded in allegations that Pharmacia misreported the AWPs for various Pharmacia prescription drugs, to the detriment of Minnesota Medicare beneficiaries, the Minnesota Medicaid program, and certain other Minnesota state programs that use AWP to set reimbursement rates for prescription drugs. Minnesota acts under its *parens patriae* authority in bringing claims on behalf of the Medicare beneficiaries. Minnesota's suit is unique in that Minnesota has not brought any claim based on violation of the "best price" requirement in a Medicaid-rebate agreement between a drug manufacturer and the federal government.

The procedural posture of Minnesota's suit against Pharmacia is also unique, in that Chief United States Magistrate Judge Lebedoff (District of Minnesota) has already recommended granting Minnesota's motion for remand. (*See* Report and Recommendation, Docket No. 25 in Civ. Action No. 02-1779-MJD/JGL (D.Minn.).) Pharmacia filed objections to Judge Lebedoff's Report and Recommendation. Before the district judge in Minnesota could rule on these objections, the case was transferred to this Court.

Pharmacia argues that federal jurisdiction is appropriate because Minnesota's claims on behalf of Medicare beneficiaries depend on a substantial question of federal law. [FN3] In particular, Pharmacia contends that Minnesota's *parens patriae* claims on behalf of Medicare beneficiaries require a determination of whether the AWPs reported by Pharmacia comport with the meaning of AWP under the Medicare statute; Pharmacia argues that Congress has sanctioned the AWP "spread." Minnesota replies that its claims do not require reference to the Medicare statute, and that Pharmacia's statutory argument is simply a defense, which is not a ground for removal. Pharmacia readily wins this dispute, because an essential element of Minnesota's *parens patriae* claims is proof of a discrepancy between the AWPs reported by Pharmacia and the meaning of AWP under the Medicare statute.

> FN3. Pharmacia waives its preemption argument for purposes of its motion to remand.

At first blush, this element of Minnesota's suit presents a federal question. The adjudication of whether the term "average wholesale price" in the Medicare statute embraces a "spread" could have broad implications for Medicare reimbursements and co-payments. But this Court is bound *256 by the Supreme Court's decision in *Merrell Dow,* which requires remanding Minnesota's suit.

In *Merrell Dow,* plaintiffs brought a state-law negligence claim alleging "that the drug Bendectin was 'misbranded' in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), 52 Stat. 1040, as amended, 21 U.S.C. § 301 *et seq.* (1982 ed. and Supp. III), because its labeling did not provide adequate warning that its use was potentially dangerous." 478 U.S. at 805-06, 106 S.Ct. 3229. The Supreme Court held that even if plaintiffs' state-law claim turned on a violation of the FDCA, this was not an issue of federal law substantial enough to convey federal-question jurisdiction. The Supreme Court found dispositive the FDCA's lack of a private right of action for branding violations:

> We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

*Id.* at 814, 106 S.Ct. 3229.

[6] Under *Merrell Dow,* where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute must provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain. *See id.; see also* *PCS 2000 LP v. Romulus Telecomms., Inc.,* 148 F.3d 32, 35 (1st Cir.1998) ("Unless a federal statute bestows a private right of action, courts ought to presume that Congress did not intend the statute to confer federal jurisdiction."); *Nashoba Communications Ltd. P'ship No. 7 v. Town of Danvers,* 893 F.2d 435, 439 (1st Cir.1990) (rejecting defendants' argument that plaintiff's state-law claims raised a federal question concerning the Cable Communications Policy Act of 1984, 47 U.S.C. §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

543 (Supp.II 1984), because the statute's lack of an express or an implied private remedy "ma[de] the federal issue insubstantial"); *Seinfeld v. Austen*, 39 F.3d 761, 764 (7th Cir.1994) ( "Under *Merrell Dow*, therefore, 'if federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a "substantial" federal question.' ") (quoting *Utley v. Varian Assocs., Inc.*, 811 F.2d 1279, 1283 (9th Cir.1987)); *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 152 (4th Cir.1994) ("[U]nder *Merrell Dow*, if a federal law does not provide a private right of action, a state law action based on its violation does not raise a 'substantial' federal question."); *Smith v. Ind. Valley Title Ins. Co.*, 957 F.2d 90, 94 (3rd Cir.1992) ("Since Congress has not provided a private federal remedy for violating [26 U.S.C.] § 6045(e)(3), *Merrell Dow* dictates that the district court did not have subject matter jurisdiction ... "); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1168 (5th Cir.1988) ("*Merrell Dow* held that a private, federal remedy was a necessary predicate to determining the presence of a federal element in a state-created cause of action resulted in that cause of action being one which arose under federal law ..."); *Rogers v. Platt*, 814 F.2d 683, 688 (D.C.Cir.1987) ("[I]n *Merrell Dow* ... [the] Court held that if Congress affirmatively determines that there should be *no* private federal cause of action that is effectively the end of the matter.") (emphasis in original); Erwin Chemerinsky, *Federal Jurisdiction* § 5.2, at 284 (3rd ed. 1999) ("[W]ithout a federal cause of action, a federal law cannot be the basis for federal question jurisdiction."). *But see Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 54 (2nd Cir.1996) ("[C]ases in this circuit have not read *Merrell Dow* categorically to preclude *257 federal question jurisdiction in the absence of a private remedy for violation of the relevant federal law .... "); *City of Huntsville v. City of Madison*, 24 F.3d 169, 174 (11th Cir.1994) (interpreting *Merrell Dow* to allow for the possibility that an "exceptional federal statute that does not provide for a private remedy ... still raises a federal question substantial enough to confer federal question jurisdiction when it is an element of a state cause of action").

Here, Pharmacia makes no argument that the Medicare statute provides a private right of action for AWP misreporting. Thus, even though violation of the Medicare statute is a necessary element of Minnesota's Medicare-beneficiary claims, *Merrell Dow* requires a finding that the federal issue is not substantial enough to create federal jurisdiction. *See* 478 U.S. at 814, 106 S.Ct. 3229.

Pharmacia also contends that remand would open the door for multiple judicial determinations of the meaning of AWP under the Medicare statute, which in turn would result in confusion in the administration of the Medicare program. But in *Merrell Dow* the Supreme Court rejected a similar argument for removal:

> [P]etitioner contends that there is a powerful federal interest in seeing that the federal statute is given uniform interpretations, and that federal review is the best way of insuring such uniformity. In addition to the significance of the congressional decision to preclude a federal remedy, we do not agree with petitioner's characterization of the federal interest and its implications for federal-question jurisdiction. To the extent that petitioner is arguing that state use and interpretation of the FDCA pose a threat to the order of the FDCA regime, petitioner should be arguing, not that federal courts should be able to review and enforce state FDCA-based causes of action as an aspect of federal-question jurisdiction, but that the FDCA pre-empts state-court jurisdiction over the issue in dispute. Petitioner's concern about the uniformity of interpretation, moreover, is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of action, this Court retains power to review the decision of a federal issue in a state cause of action.

*Id.* at 815-16, 106 S.Ct. 3229. The Court sees no cause to depart from *Merrell Dow* on this score.

For these reasons, Minnesota's suit must be remanded to state court in Minnesota.

**B. Montana**

Montana's amended complaint against various pharmaceutical companies includes seven state-law claims: two separate claims for deceptive trade practices, two separate claims for restraint of trade, a Medicaid-fraud claim, a false-claims claim, and a claim for punitive damages. Several of these claims are founded on allegations that defendants misreported AWPs for certain of their drugs, to the detriment of Montana Medicare beneficiaries, the Montana Medicaid program, and other Montana state agencies that use AWP to determine reimbursement rates for prescription drugs. These AWP claims echo those of Minnesota, and for the reasons discussed above, such claims do not provide a basis for federal jurisdiction.

Montana's original complaint had a claim for breach

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of contract based on violations of federal Medicaid-rebate agreements; this claim was deleted from the amended complaint. At the hearing before this Court, plaintiffs did not dispute that the deleted claim raised a federal question, but argued that the Court must limit its jurisdictional analysis to the *258 amended complaint. But defendants correctly noted that the Court must analyze removal based on the original complaint, including the breach of contract claim. Ching v. Mitre Corp., 921 F.2d 11, 13 (1st Cir.1990) ("An amendment to a complaint *after removal* designed to eliminate the federal claim will not defeat federal jurisdiction.") (emphasis in original). This does not end the Court's inquiry into Montana's claims, however, as the Court will proceed to determine whether there is an independent basis for federal jurisdiction over the remaining claims, or whether the Court has the discretion to remand these claims pursuant to 28 U.S.C. § 1367(c)(3) (2003).

The remaining claims are tort claims based on allegations that defendants violated the "best price" requirement contained in Medicaid-rebate agreements between defendants and the federal government. These claims raise the question of whether state-law tort claims requiring interpretation of a contract with the federal government--as opposed to the interpretation of a federal statute, as in *Merrell Dow*--create federal-question jurisdiction.

The First Circuit answered this question in *Almond v. Capital Properties, Inc.*, 212 F.3d 20 (1st Cir.2000). In *Almond*, various parties--including the Federal Railroad Administration ("FRA"), the state of Rhode Island, and a real-estate developer--entered into an agreement to relocate a Providence railroad station and to build a parking garage at the new station location. *Id.* at 21. The developer and the FRA entered into a subordinate contract in which the developer agreed that the FRA "shall have the right of prior approval of any changes in public parking rates." *Id.* This subordinate contract was incorporated into an agreement between the developer and the state of Rhode Island. *Id.* After the developer's successor-in-interest allegedly raised the garage's parking rates without seeking the FRA's approval, Rhode Island filed suit "to enjoin [the successor-in-interest's] alleged violation of its contractual obligation to seek FRA approval for rate increases." *Id.* at 21-22. The defendant removed the case to federal court. *Id.* at 22.

On appeal, the First Circuit *sua sponte* examined the propriety of removal. *Id.* at 22-24. At the outset, the First Circuit noted that

> [t]his action was removed from state court on the ground that it came within the district court's "arising under" jurisdiction, 28 U.S.C. § 1331 (1994). This appears to be a correct position, as we will explain, because the complaint necessarily presents and turns upon the interpretation of a contractual obligation to the United States. But this is a remarkably tangled corner of the law and there is little direct authority, partly because in most cases interpreting contracts with the United States the federal government is a party and jurisdiction is automatic under 28 U.S.C. § § 1345, 1346(a)(2) (1994).

*Id.* at 22. The Circuit Court assumed that federal law did not create the state's contract claim, but held "federal law surely controls on what is the most important issue." *Id.* at 23.

Though the federal contract-law issue was plainly necessary to Rhode Island's state-law claim, this left the "almost unanswerable question of whether the Supreme Court would regard the federal issue in this case as sufficiently important to confer 'arising under' jurisdiction on the district court." *Id.* at 23-24. The First Circuit found that the federal interest was "surely more than in *Merrell*" because "not only is a federal agency a party to the [parking-rate] contract, but the issue presented is whether a specific rate increase must be *259 presented to that agency." *Id.* at 24 & n. 3. The First Circuit held that federal-question jurisdiction existed. *Id.* at 24.

[7] Here, Montana's best-price claims require interpretation of contracts to which the Federal Department of Health and Human Services is a party, and the pharmaceutical companies' best-price obligations under these contracts are governed by federal common law. *See* Boyle v. United Tech. Corp., 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) ( "[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law."). Moreover, if Montana were to prevail on the best-price claims, it could result in substantial changes in the Medicaid reimbursements paid out by the federal government--an impact far greater than the FRA's possible need to review a rate increase for a Providence parking garage. In short, if the federal contract-law issues in *Almond* were substantial enough to create federal-question jurisdiction, *a fortiori* Montana's best-price claims also produce federal-question jurisdiction.

The cases cited by Montana are not on point--*i.e.*, they do not address a state-law claim of which a federal contract-law issue is a necessary element--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

with one exception: the Ninth Circuit's decision in Hunter v. United Van Lines, 746 F.2d 635 (9th Cir.1984). In *Hunter*, the Ninth Circuit examined whether federal-question jurisdiction arose from a claim under California law for tortious bad faith, where the claim depended on federal contract law. *Id.* at 644-48. As the Circuit Court stated:

> The core of the tortious bad faith claim ... is that the alleged harassment and intimidation on the part of appellees constituted a breach of their state-law duty to handle [a] contract claim in good faith. We assume that, in order to prevail on such a state-law claim, plaintiffs must show that they had at least a colorable contract claim against defendants; otherwise, there would have been no duty to negotiate the claim in good faith, and no breach would have occurred. Here, the alleged contract claim that gave rise to the duty to negotiate in good faith was a claim which was itself governed by federal law. Federal law thus can be said to form an ingredient in plaintiffs' state-law claim for tortious bad faith. We must determine whether that federal ingredient is sufficient to give rise to federal jurisdiction ...

*Id.* at 645. The Ninth Circuit held that the federal contract-law issue did not create federal-question jurisdiction:

> Even if California requires a showing that the contract claim is valid, federal jurisdiction is lacking. To be sure, proving a federal element would be necessary to making out the state claim. Nonetheless, federal law would play an insufficiently prominent role in the resolution of the state claim to give rise to federal jurisdiction over that claim. The gist of plaintiffs' bad faith claim is that defendants engaged in conduct regarding the handling of the underlying claim that is made unlawful by California; the federal element merely determines as a preliminary matter, whether the duty imposed by the state is inapplicable in the case of a particular transaction. The fact that federal law plays a preliminary, threshold role in the case of state claims such as this one does not, by itself, transform such state claims into federal ones.

*Id.* at 646.

*Hunter* can be fairly distinguished from *Almond* and the instant case, because *Hunter* did not involve a contract with the federal government. Even if *Hunter* conflicts with *Almond*, this Court is bound by First Circuit precedent in adjudicating transferred multi-district cases. *See, e.g.*, *260 *In re TMJ Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir.1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."); *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir.1994) (same); *Menowitz v. Brown*, 991 F.2d 36, 40-41 (2nd Cir.1993) (same); *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C.Cir.1987) (same). Following *Almond*, the Court holds that Montana's best-price claims fall within the Court's federal-question jurisdiction, and the Court exercises supplemental jurisdiction over Montana's AWP claims.

C. Nevada

Nevada has filed two suits: one versus Abbot Laboratories, Inc., et al. ("Nevada I"), and one against American Home Products Corp., et al. ("Nevada II"). Both suits include, *inter alia*, best-price claims like those of Montana. For the reasons discussed above, Nevada's best-price claims give this Court federal-question jurisdiction over Nevada I and II.

[8][9] Nevada raises a procedural argument for remanding Nevada I, namely, defendants' failure to consent unanimously to removal. As a general matter, in cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition. *See, e.g.*, *Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 620, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) (citing *Chicago, Rock Island, & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900) for the proposition that "removal requires the consent of all defendants"); *Wis. Dep't of Corrections v. Schacht*, 524 U.S. 381, 393, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring) ("Removal requires the consent of all of the defendants."). "This 'rule of unanimity' requires that all defendants file their notice of removal or consent to removal within thirty days of being served," and "[f]ailure to do so constitutes a 'defect in the removal procedure' and is grounds for remand.' " *Murphy v. Newell Operating Co.*, 245 F.Supp.2d 316, 318 (D.Mass.2003) (citing *Sansone v. Morton Mach. Works, Inc.*, 188 F.Supp.2d. 182, 184 (D.R.I.2002)). *See also* 28 U.S.C. § 1446(b) (2003) (stating that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant ... of a copy of the initial pleading")

[10] Here, the following facts are undisputed: Defendants in Nevada I were served with the complaint on January 17, 2002. All the defendants

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

faced removable federal claims, *i.e.*, the best-price claims, though the particular Medicaid rebate agreement(s) at issue varied from defendant to defendant. On February 15, 2002, defendant GlaxoSmithKline removed the case to federal district court pursuant to 28 U.S.C. § 1441, the general removal statute. Defendant Baxter Pharmaceutical Products, Inc. not only failed to consent to removal, it filed an objection to removal on February 20, 2002. On May 30, 2002--well over thirty days after being served with the complaint--Baxter reversed itself, and filed a notice of consent to removal. These facts show that unanimous consent was not achieved due to Baxter's failure to consent in timely fashion. [FN4]

FN4. At the hearing before this Court, defendants' counsel stated that "we agree that to the extent a party later consented that doesn't matter," waiving any argument that failure to consent can be cured.

While not disputing that unanimous consent is required for removal pursuant to 28 U.S.C. § 1441(a)-(b), defendants argue *261 that 28 U.S.C. § 1441(c) authorized removal of the Nevada cases without unanimous consent. § 1441(c) states:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 [the federal-question statute] of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed ....

Defendants contend that under § 1441(c), *any* defendant facing a federal-question claim that is separate and independent from otherwise non-removable claims in the case, unilaterally can remove the entire case to federal court. Defendants' argument requires the Court to carefully examine both the rule of unanimity and § 1441(c).

The rule of unanimity is a judicial interpretation of statutory removal procedure. 28 U.S.C. § 1446, which sets out the basic procedures for removal, provides: "*A defendant or defendants* desiring to remove any civil action ...." (emphasis added). The courts have long construed this language to require the rule of unanimity. *See, e.g.*, *Doe v. Kerwood*, 969 F.2d 165, 167 (5th Cir.1992) (stating that courts have read "defendant or defendants" in removal statutes as "mean[ing] that, if there is only one defendant then that defendant may remove the case; however, if there is more than one defendant, then the defendants must act collectively to remove the case"). As the Eleventh Circuit recently observed, the rule is consistent with the traditionally narrow reading of the removal statutes:

> Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). Beginning with the United States Supreme Court's decision in *Chicago R.I. & Pac. Ry. Co.*, 178 U.S. at 248, 20 S.Ct. 854, 44 L.Ed. 1055, federal courts have universally required unanimity of consent in removal cases involving multiple defendants. There are several such bright line limitations on federal removal jurisdiction (e.g. the removal bar for in-state defendants and the one year time limit for diversity removals) that some might regard as arbitrary and unfair. Such limitations, however, are an inevitable feature of a court system of limited jurisdiction that strictly construes the right to remove.

*Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir.2001).

Courts have disagreed over the contours of the rule of unanimity. Two cases from this District have found an exception where certain defendants face only non-removable claims. *See Shepard v. Egan*, 767 F.Supp. 1158, 1161 (D.Mass.1990) (holding that "those defendants who could not have removed the case themselves if they had been the sole defendants in the action, need not join the removal petition"); *Hill v. City of Boston*, 706 F.Supp. 966, 968 (agreeing with other district-court opinions that "unanimity as to removal is required only of those parties who would independently have the right to remove"). The Fifth Circuit has disagreed. *See Kerwood*, 969 F.2d at 167-68 (rejecting *Hill*'s "'refinement" of the rule of unanimity, and holding that unanimity of consent is required by the Supreme Court's decision in *Chicago, Rock Island, & Pacific Railway Co. v. Martin*, even where certain defendants face only non-removable claims). Regardless of the outcome of this judicial debate, this exception is inapplicable here because all of the defendants faced a removable federal claim.

*262 The Court now turns to § 1441(c) and the stygian caselaw surrounding it. The current version of § 1441(c)--as amended by Congress in 1990--"explicitly provid[es] discretionary removal jurisdiction over [an] entire case where [a] federal claim is accompanied by a 'separate and independent' state law claim." *Schacht*, 524 U.S. at 387, 118 S.Ct. 2047. § 1441(c) stretches removal jurisdiction beyond § 1441(a)-(b), which are limited to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

federal courts' supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (giving federal courts supplemental jurisdiction over state-law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"). [FN5] The House Report for the 1990 Act discussed the purpose of the current version of § 1441(c):

> FN5. In *Bonanno Linen Serv., Inc. v. McCarthy*, 708 F.2d 1, 6-11 (1st Cir.1983) (dealing with state claim against pendent parties), the First Circuit held that an intermediate area existed between supplemental jurisdiction and jurisdiction under § 1441(c) In this intermediate area, removal is improper *See id*; *see also* John Henry Lewin, *"The Federal Courts' Hospitable Back Door--Removal of "Separate and Independent" Non-Federal Causes of Action,"* 66 Harv. L.Rev. 423, 431 (1953) (noting the "curious result" in the intermediate area).

> The amendment . retain[s] the opportunity for removal in the one situation in which it seems clearly desirable. The joinder rules of many states permit a plaintiff to join completely unrelated claims in a single action. The plaintiff could easily bring a single action on a federal claim and a completely unrelated state claim. The reasons for permitting removal of federal question cases applies with full force. In addition, the amended provision could actually simplify determination of removability. In many cases the federal and state claims will be related in such a way as to establish pendent [or "supplemental"] jurisdiction over the state claim. Removal of such cases is possible under Sec. 1441(a). The amended provision would establish *a basis for removal* that would avoid the need to decide whether there is pendent jurisdiction.

H.R.Rep. No. 101-734, section 109 (1990) (emphasis added). As the House Report indicates, the current § 1441(c) was not intended to provide an exception to the rule of unanimity, but rather to allow for removal of an entire case where a plaintiff attempts to use liberal joinder rules to preclude supplemental jurisdiction. Indeed, § 1441(c) is different in kind from the rule of unanimity: § 1441(c) is a *basis for removal jurisdiction*, while the rule of unanimity is a *rule of removal procedure*. Thus, defendants' argument that § 1441(c) necessarily trumps the rule of unanimity is incorrect.

[11] The pivotal question is whether the Court should nonetheless find an exception to the rule of unanimity where § 1441(c) is a proper basis for jurisdiction, even if multiple defendants face removable claims. The weight of authority is against such an exception. As the District of Nevada stated in *Jetstar Inc. v. Monarch Sales & Service Co.*:

> Thus when a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the defendant or defendants to the claim that is removable may file a petition to remove the entire case without the joinder of the defendant or defendants to the otherwise nonremovable cause of action. But if there are two separate and independent claims and both such claims are removable, then all the defendants to both claims must seek removal.

*263 652 F.Supp. 310, 312 (D.Nev.1987) (quoting 1A *Moore's Federal Practice* ¶ 0.168 [3.-2-2] at p. 556-57) *See also* *P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Ins. Co.*, 395 F.2d 546, 548 (7th Cir.1968) (relying on *Moore's* to reject argument that one insurer could properly effect removal acting alone under 28 U.S.C. § 1441(c) where other insurer had a removable claim but declined to remove); *Knickerbocker v. Chrysler Corp.*, 728 F.Supp. 460, 462-63 (E.D.Mich.1990) (quoting *Moore's* with approval). *But see* *Port of N.Y. Auth. v. Eastern Air Lines, Inc.*, 259 F.Supp. 142, 145 (E.D.N.Y.1966) (holding that, under earlier version of § 1441(c), "[i]f . the right of removal is to have substance, it should not be defeated by the joinder in the same suit of other removable claims and the failure of the other removable defendants to exercise their right to remove"). In accordance with the weight of authority--and with the general presumption against the exercise of federal jurisdiction--the Court holds that under the rule of unanimity, all defendants to all removable claims must consent to removal, even where § 1441(c) is a proper basis for removal.

The procedure used to effect removal of Nevada I was therefore defective and plaintiffs did not waive the defect. In Nevada I, all defendants confronted removable claims--namely, the best-price claims--and all defendants needed to consent to removal. Because Baxter did not timely consent to removal, unanimous consent was not achieved, and Nevada I must be remanded to state court in Nevada.

In Nevada II, however, all defendants consented to removal. The Court has federal-question jurisdiction over the best-price claims in Nevada II, and the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exercises supplemental jurisdiction over the remaining claims in Nevada II.

***ORDER***

The Court ***DENIES*** Defendant Pharmacia Corporation's Objections to Magistrate Judge's Report and Recommendation Regarding Plaintiff's Motion to Remand (Docket No. 27 in Civ. Action No. 02-1779-MJD/JGL (D.Minn.)), *ALLOWS* Plaintiff State of Minnesota's Motion to Remand (Docket No. 1 in Civ. Action No. 03-10069-PBS), and *ORDERS* Civil Action Number 03-10069-PBS remanded to District Court in the Fourth Judicial District, County of Hennepin, Minnesota. The Court ***DENIES*** Minnesota's request for attorneys' fees. The Court *DENIES* Plaintiff State of Montana's Motion to Remand (Docket No. 251 in Civ. Action No. 01-12257-PBS). The Court *ALLOWS-IN-PART* and *DENIES-IN-PART* Plaintiff State of Nevada's Motion to Remand (Docket No. 255 in Civ. Action No. 01-CV-12257-PBS) and ***ORDERS*** Civil Action Number 02-12085-PBS remanded to the Second Judicial District Court, Washoe County, Nevada.

266 F.Supp.2d 250

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

**H**

**Briefs and Other Related Documents**

Supreme Court of the United States
GRABLE & SONS METAL PRODUCTS, INC.,
Petitioner,
v.
DARUE ENGINEERING & MANUFACTURING.
No. 04-603.

June 13, 2005.

**Background:** Former landowner brought quiet title action in state court against tax sale purchaser, alleging Internal Revenue Service (IRS) had given him inadequate notice of sale. Following removal, the United States District Court for the Western District of Michigan, McKeague, J., 207 F.Supp.2d 694, ruled for purchaser. Former owner appealed. The Court of Appeals, Boggs, Circuit Judge, 377 F.3d 592, affirmed. Certiorari was granted.

**Holding:** The Supreme Court, Justice Souter, held that suit presented removable federal question.
Affirmed.

Justice Thomas concurred and filed opinion.

West Headnotes

**[1] Federal Courts 241**
170Bk241 Most Cited Cases
Federal court has federal question jurisdiction over state law claim if it necessarily states federal issue, actually disputed and substantial, which federal forum may entertain without disturbing congressionally approved balance of federal and state judicial responsibilities. 28 U.S.C.A. § 1331.

**[2] Removal of Cases 19(10)**
334k19(10) Most Cited Cases

**[2] Removal of Cases 25(1)**
334k25(1) Most Cited Cases
Former landowner's state law quiet title action against federal tax sale purchaser, alleging that Internal Revenue Service (IRS) had given him inadequate notice of sale, asserted removable federal question; whether former owner received notice was essential element of his claim, meaning of federal notice statute was actually disputed, and its meaning was important federal tax law issue that belonged in federal court. 28 U.S.C.A. § § 1331, 1441(a).

*2364 *Syllabus* [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

The Internal Revenue Service seized real property owned by petitioner (hereinafter Grable) to satisfy a federal tax delinquency, and gave Grable notice by certified mail before selling the property to respondent (hereinafter Darue). Grable subsequently brought a quiet title action in state court, claiming that Darue's title was invalid because 26 U.S.C. § 6335 required the IRS to give Grable notice of the sale by personal service, not certified mail. Darue removed the case to Federal District Court as presenting a federal question because the title claim depended on an interpretation of federal tax law. The District Court declined to remand the case, finding that it posed a significant federal-law question, and it granted Darue summary judgment on the merits. The Sixth Circuit affirmed, and this Court granted certiorari on the jurisdictional question.

*Held*: The national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal. Pp. 2366-2371.

(a) Darue was entitled to remove the quiet title action if Grable could have brought it in federal court originally, as a civil action "arising under the ... laws ... of the United States," 28 U.S.C. § 1331. Federal-question jurisdiction is usually invoked by plaintiffs pleading a cause of action created by federal law, but this Court has also long recognized that such jurisdiction will lie over some state-law claims that implicate significant federal issues, see, *e.g.*, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577. Such federal jurisdiction demands not only a contested federal issue, but a substantial one. And the jurisdiction must be consistent with congressional judgment about the sound division of labor between state and federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

courts governing § 1331's application. These considerations have kept the Court from adopting a single test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. Instead, the question is whether the state-law claim necessarily stated a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities. Pp. 2366-2368.

(b) This case warrants federal jurisdiction. Grable premised its superior title claim on the IRS's failure to give adequate notice, as defined by federal law. Whether Grable received notice is an essential element of its quiet title claim, and the federal statute's meaning is actually disputed. The meaning of a federal tax provision is an important federal-law issue that belongs in federal court. The Government has a strong interest in promptly collecting delinquent taxes, and the IRS's ability to satisfy its claims from delinquents' property requires clear terms of notice to assure buyers like Darue that the IRS has good title. Finally, because it will be the rare state title case that raises a *2365 federal-law issue, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor. This conclusion puts the Court in venerable company, quiet title actions having been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims. *E.g.*, *Hopkins v. Walker*, 244 U.S. 486, 490-491, 37 S.Ct. 711, 61 L.Ed. 1270. Pp. 2368-2369.

(c) *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650, is not to the contrary. There, in finding federal jurisdiction unavailable for a state tort claim resting in part on an allegation that the defendant drug company had violated a federal branding law, the Court noted that Congress had not provided a private federal cause of action for such violations. *Merrell Dow* cannot be read to make a federal cause of action a necessary condition for federal-question jurisdiction. It disclaimed the adoption of any bright-line rule and expressly approved the exercise of jurisdiction in *Smith*, where there was no federal cause of action. Accordingly, *Merrell Dow* should be read in its entirety as treating the absence of such cause as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent," required by § 1331. *Id.*, at 810, 106 S.Ct. 3229. In *Merrell Dow*, the principal significance of this absence was its bearing on the consequences to the federal system. If the federal labeling standard without a cause of action could get a state claim into federal court, so could any other federal standards without causes of action. And that would mean an enormous number of cases. A comparable analysis yields a different jurisdictional conclusion here, because state quiet title actions rarely involve contested federal-law issues. Pp. 2369-2371.

377 F.3d 592, affirmed.

SOUTER, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

Eric H. Zagrans, for petitioner.

Michael C. Walton, for respondent.

Irving L. Gornstein, for United States as amicus curiae, by special leave of the Court, supporting the respondent.

Charles E. McFarland, Counsel of Record, New Castle, KY, for Petitioner.

Michael C. Walton, Counsel of Record, John M. Lichtenberg, Gregory G. Timmer, Mary L. Tabin, Anthony A. Pearson, Matthew B. Van Dyk, Rhoades McKee, Grand Rapids, MI, for respondent.

Justice SOUTER delivered the opinion of the Court.

The question is whether want of a federal cause of action to try claims of title to land obtained at a federal tax sale precludes removal to federal court of a state action with non-diverse parties raising a disputed issue of federal title law. We answer no, and hold that the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress.

***2366 I**

In 1994, the Internal Revenue Service seized Michigan real property belonging to petitioner Grable & Sons Metal Products, Inc., to satisfy Grable's federal tax delinquency. Title 26 U.S.C. § 6335 required the IRS to give notice of the seizure, and there is no dispute that Grable received actual notice by certified mail before the IRS sold the property to respondent Darue Engineering & Manufacturing. Although Grable also received notice of the sale

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

itself, it did not exercise its statutory right to redeem the property within 180 days of the sale, § 6337(b)(1), and after that period had passed, the Government gave Darue a quitclaim deed § 6339.

Five years later, Grable brought a quiet title action in state court, claiming that Darue's record title was invalid because the IRS had failed to notify Grable of its seizure of the property in the exact manner required by § 6335(a), which provides that written notice must be "given by the Secretary to the owner of the property [or] left at his usual place of abode or business." Grable said that the statute required personal service, not service by certified mail.

Darue removed the case to Federal District Court as presenting a federal question, because the claim of title depended on the interpretation of the notice statute in the federal tax law. The District Court declined to remand the case at Grable's behest after finding that the "claim does pose a significant question of federal law," Tr. 17 (Apr. 2, 2001), and ruling that Grable's lack of a federal right of action to enforce its claim against Darue did not bar the exercise of federal jurisdiction. On the merits, the court granted summary judgment to Darue, holding that although § 6335 by its terms required personal service, substantial compliance with the statute was enough. 207 F.Supp.2d 694 (W.D.Mich.2002).

The Court of Appeals for the Sixth Circuit affirmed. 377 F.3d 592 (2004). On the jurisdictional question, the panel thought it sufficed that the title claim raised an issue of federal law that had to be resolved, and implicated a substantial federal interest (in construing federal tax law). The court went on to affirm the District Court's judgment on the merits. We granted certiorari on the jurisdictional question alone, [FN1] 543 U.S. ----, 125 S.Ct. 824, 160 L.Ed.2d 610 (2005) to resolve a split within the Courts of Appeals on whether *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), always requires a federal cause of action as a condition for exercising federal-question jurisdiction. [FN2] We now affirm.

FN1. Accordingly, we have no occasion to pass upon the proper interpretation of the federal tax provision at issue here.

FN2. Compare *Seinfeld v. Austen*, 39 F.3d 761, 764 (C.A.7 1994) (finding that federal-question jurisdiction over a state-law claim requires a parallel federal private right of action), with *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (C.A.4 1996) (finding that a federal private action is not required).

## II

[1] Darue was entitled to remove the quiet title action if Grable could have brought it in federal district court originally, 28 U.S.C. § 1441(a), as a civil action "arising under the Constitution, laws, or treaties of the United States," § 1331. This provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983). There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, *2367 this Court having recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. *E.g.*, *Hopkins v. Walker*, 244 U.S. 486, 490-491, 37 S.Ct. 711, 61 L.Ed. 1270 (1917). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues, see ALI, Study of the Division of Jurisdiction Between State and Federal Courts 164-166 (1968).

The classic example is *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), a suit by a shareholder claiming that the defendant corporation could not lawfully buy certain bonds of the National Government because their issuance was unconstitutional. Although Missouri law provided the cause of action, the Court recognized federal-question jurisdiction because the principal issue in the case was the federal constitutionality of the bond issue. *Smith* thus held, in a somewhat generous statement of the scope of the doctrine, that a state-law claim could give rise to federal-question jurisdiction so long as it "appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]." *Id.*, at 199, 41 S.Ct. 243.

The *Smith* statement has been subject to some trimming to fit earlier and later cases recognizing the vitality of the basic doctrine, but shying away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the "arising under" door. As early as 1912, this Court had confined federal-question jurisdiction over state-law claims to those that "really and substantially involv[e] a dispute or controversy respecting the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

validity, construction or effect of [federal] law." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). This limitation was the ancestor of Justice Cardozo's later explanation that a request to exercise federal-question jurisdiction over a state action calls for a "common-sense accommodation of judgment to [the] kaleidoscopic situations" that present a federal issue, in "a selective process which picks the substantial causes out of the web and lays the other ones aside." Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 117-118, 57 S.Ct. 96, 81 L.Ed. 70 (1936). It has in fact become a constant refrain in such cases that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. E.g., Chicago v. International College of Surgeons, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); Merrell Dow, supra, at 814, and n. 12, 106 S.Ct. 3229; Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. Thus, Franchise Tax Bd. explained that the appropriateness of a federal forum to hear an embedded issue could be evaluated only after considering the "welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." Id., at 8, 103 S.Ct. 2841. Because arising-under jurisdiction to hear *2368 a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction. See also Merrell Dow, supra, at 810, 106 S.Ct. 3229.

These considerations have kept us from stating a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 821, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (STEVENS, J., concurring). We have not kept them out simply because they appeared in state raiment, as Justice Holmes would have done, see Smith, supra, at 214, 41 S.Ct. 243 (dissenting opinion), but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

III

A

[2] This case warrants federal jurisdiction. Grable's state complaint must specify "the facts establishing the superiority of [its] claim," Mich. Ct. Rule 3.411(B)(2)(c) (West 2005), and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the "prompt and certain collection of delinquent taxes," United States v. Rodgers, 461 U.S. 677, 709, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor. See n. 3, *infra*.

This conclusion puts us in venerable company, quiet title actions having been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims. In Hopkins, 244 U.S., at 490-491, 37 S.Ct. 711, the question was federal jurisdiction over a quiet title action based on the plaintiffs' allegation that federal mining law gave them the superior claim. Just as in this case, "the facts showing the plaintiffs' title and the existence and invalidity of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the instrument or record sought to be eliminated as a cloud upon the title are essential parts of the *2369 plaintiffs' cause of action." [FN3] Id., at 490, 37 S.Ct. 711. As in this case again, "it is plain that a controversy respecting the construction and effect of the [federal] laws is involved and is sufficiently real and substantial." Id., at 489, 37 S.Ct. 711. This Court therefore upheld federal jurisdiction in Hopkins, as well as in the similar quiet title matters of *Northern Pacific R. Co. v. Soderberg*, 188 U.S. 526, 528, 23 S.Ct. 365, 47 L.Ed. 575 (1903), and *Wilson Cypress Co. v. Del Pozo Y Marcos*, 236 U.S. 635, 643-644, 35 S.Ct. 446, 59 L.Ed. 758 (1915). Consistent with those cases, the recognition of federal jurisdiction is in order here.

FN3. The quiet title cases also show the limiting effect of the requirement that the federal issue in a state-law claim must actually be in dispute to justify federal-question jurisdiction. In *Shulthis v. McDougal*, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912), this Court found that there was no federal question jurisdiction to hear a plaintiff's quiet title claim in part because the federal statutes on which title depended were not subject to "any controversy respecting their validity, construction, or effect." Id., at 570, 32 S.Ct. 704. As the Court put it, the requirement of an actual dispute about federal law was "especially" important in "suit[s] involving rights to land acquired under a law of the United States," because otherwise "every suit to establish title to land in the central and western states would so arise [under federal law], as all titles in those States are traceable back to those laws." Id., at 569-570, 32 S.Ct. 704.

B

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), on which Grable rests its position, is not to the contrary. *Merrell Dow* considered a state tort claim resting in part on the allegation that the defendant drug company had violated a federal misbranding prohibition, and was thus presumptively negligent under Ohio law. Id., at 806, 106 S.Ct. 3229. The Court assumed that federal law would have to be applied to resolve the claim, but after closely examining the strength of the federal interest at stake and the implications of opening the federal forum, held federal jurisdiction unavailable. Congress had not provided a private federal cause of action for violation of the federal branding requirement, and the Court found "it would ... flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation ... is said to be a ... 'proximate cause' under state law." Id., at 812, 106 S.Ct. 3229.

Because federal law provides for no quiet title action that could be brought against Darue, [FN4] Grable argues that there can be no federal jurisdiction here, stressing some broad language in *Merrell Dow* (including the passage just quoted) that on its face supports Grable's position, see Note, Mr. Smith Goes to Federal Court: Federal Question Jurisdiction over State Law Claims Post-*Merrell Dow*, 115 Harv. L.Rev. 2272, 2280-2282 (2002) (discussing split in Circuit Courts over private right of action requirement after *Merrell Dow*). But an opinion is to be read as a whole, and *Merrell Dow* cannot be read whole as overturning decades of precedent, as it would have done by effectively adopting the Holmes dissent in *Smith*, see *supra*, at 2368, and converting a federal cause of action from a sufficient condition for federal *2370 question jurisdiction [FN5] into a necessary one.

FN4. Federal law does provide a quiet title cause of action against the Federal Government. 28 U.S.C. § 2410. That right of action is not relevant here, however, because the federal government no longer has any interest in the property, having transferred its interest to Darue through the quitclaim deed.

FN5. For an extremely rare exception to the sufficiency of a federal right of action, see *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 507, 20 S.Ct. 726, 44 L.Ed. 864 (1900).

In the first place, *Merrell Dow* disclaimed the adoption of any bright-line rule, as when the Court reiterated that "in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." 478 U.S., at 810, 106 S.Ct. 3229. The opinion included a lengthy footnote explaining that questions of jurisdiction over state-law claims require "careful judgments," id., at 814, 106 S.Ct. 3229, about the "nature of the federal interest at stake," id., at 814, n. 12, 106 S.Ct. 3229 (emphasis deleted). And as a final indication that it did not mean to make a federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

right of action mandatory, it expressly approved the exercise of jurisdiction sustained in *Smith*, despite the want of any federal cause of action available to *Smith's* shareholder plaintiff. 478 U.S., at 814, n. 12, 106 S.Ct. 3229. *Merrell Dow* then, did not toss out, but specifically retained the contextual enquiry that had been *Smith's* hallmark for over 60 years. At the end of *Merrell Dow*, Justice Holmes was still dissenting.

Accordingly, *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected *Merrell Dow's* result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

One only needed to consider the treatment of federal violations generally in garden variety state tort law. "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." [FN6] Restatement (Third) of Torts (proposed final draft) § 14, Comment *a*. See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Torts, § 36, p. 221, n. 9 (5th ed. 1984) ("[T]he breach of a federal statute may support a negligence per se claim as a matter of state law" (collecting authority)). A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally *2371 state cases into federal courts. Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] ... under state law." 478 U.S., at 811-812, 106 S.Ct. 3229 (internal quotation marks omitted). In this situation, no welcome mat meant keep out. *Merrell Dow's* analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts.

FN6. Other jurisdictions treat a violation of a federal statute as evidence of negligence or, like Ohio itself in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), as creating a rebuttable presumption of negligence. Restatement (Third) of Torts (proposed final draft) § 14, Comment *c*. Either approach could still implicate issues of federal law.

As already indicated, however, a comparable analysis yields a different jurisdictional conclusion in this case. Although Congress also indicated ambivalence in this case by providing no private right of action to Grable, it is the rare state quiet title action that involves contested issues of federal law, see n. 3, *supra*. Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation. Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim. [FN7]

FN7. At oral argument Grable's counsel espoused the position that after *Merrell Dow*, federal-question jurisdiction over state-law claims absent a federal right of action, could be recognized only where a constitutional issue was at stake. There is, however, no reason in text or otherwise to draw such a rough line. As *Merrell Dow* itself suggested, constitutional questions may be the more likely ones to reach the level of substantiality that can justify federal jurisdiction. 478 U.S., at 814, n. 12, 106

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S.Ct. 3229. But a flat ban on statutory questions would mechanically exclude significant questions of federal law like the one this case presents.

IV

The judgment of the Court of Appeals, upholding federal jurisdiction over Grable's quiet title action, is affirmed.

*It is so ordered.*

Justice THOMAS, concurring.

The Court faithfully applies our precedents interpreting 28 U.S.C. § 1331 to authorize federal-court jurisdiction over some cases in which state law creates the cause of action but requires determination of an issue of federal law, *e.g.*, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In this case, no one has asked us to overrule those precedents and adopt the rule Justice Holmes set forth in *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916), limiting § 1331 jurisdiction to cases in which federal law creates the cause of action pleaded on the face of the plaintiff's complaint. *Id.*, at 260, 36 S.Ct. 585. In an appropriate case, and perhaps with the benefit of better evidence as to the original meaning of § 1331's text, I would be willing to consider that course. [FN*]

FN* This Court has long construed the scope of the statutory grant of federal-question jurisdiction more narrowly than the scope of the constitutional grant of such jurisdiction. See *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807-808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). I assume for present purposes that this distinction is proper--that is, that the language of 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all *civil actions arising under* the Constitution, laws, or treaties of the United States" (emphasis added), is narrower than the language of Art. III, § 2, cl. 1, of the Constitution, "[t]he judicial Power shall extend to all *Cases*, in Law and Equity, *arising under* this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority. . ." (emphases added).

*2372 Jurisdictional rules should be clear. Whatever the virtues of the *Smith* standard, it is anything but clear. *Ante*, at 2367 (the standard "calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the substantial causes out of the web and lays the other ones aside' " (quoting *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 117-118, 57 S.Ct. 96, 81 L.Ed. 70 (1936))); *ante*, at 2368 ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"); *ante*, at 2370 (" '[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system' "; "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires" (quoting *Merrell Dow, supra*, at 810, 106 S.Ct. 3229)).

Whatever the vices of the *American Well Works* rule, it is clear. Moreover, it accounts for the " 'vast majority' " of cases that come within § 1331 under our current case law, *Merrell Dow, supra*, at 808, 106 S.Ct. 3229 (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983))-- further indication that trying to sort out which cases fall within the smaller *Smith* category may not be worth the effort it entails. See R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 885-886 (5th ed.2003). Accordingly, I would be willing in appropriate circumstances to reconsider our interpretation of § 1331.

125 S.Ct. 2363, 73 USLW 4501

**Briefs and Other Related Documents (Back to top)**

• 2005 WL 853909 (Appellate Brief) Reply Brief on the Merits%tc (Apr. 11, 2005)Original Image of this Document (PDF)

• 2005 WL 736815 (Appellate Brief) Brief for the United States as Amicus Curiae Supporting Respondent%tc (Mar. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 737002 (Appellate Brief) Brief for Respondent%tc (Mar. 28, 2005)Original Image of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

this Document (PDF)

• 2005 WL 1333265 (Appellate Brief) Motion for Leave to File Brief Amici Curiae and Brief of Amici Curiae Jerome R. Mikulski Et Ux. in Support of Petitioner%tc (Feb. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 482909 (Appellate Brief) Brief on the Merits%tc (Feb. 22, 2005)Original Image of this Document (PDF)

• 2004 WL 3008660 (Appellate Petition, Motion and Filing) Petition's Reply to Brief in Opposition to Petition for a Writ of Certiorari (Dec. 13, 2004)

• 2004 WL 2790632 (Appellate Petition, Motion and Filing) Brief in Opposition to Petition for Writ of Certiorari (Dec. 01, 2004)

• 04-603 (Docket) (Nov. 04, 2004)

• 2004 WL 3092472 (Appellate Petition, Motion and Filing) Petition for a Writ of Certiorari (Oct. 25, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works