**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| THE STATE OF ALABAMA<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC., et al.,<br><br>Defendants. | ) | CASE NO. 2:05CV647-M |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Plaintiff's remand motion should be denied. This lawsuit is one of dozens of pharmaceutical average wholesale price ("AWP") actions that have been pending since 2001. Many of those cases involve state law claims virtually identical to those asserted by plaintiff here. Beginning in 2002, the Judicial Panel on Multidistrict Litigation ("JPML") has transferred more than thirty such cases, including similar cases brought by other state attorneys general, to the Honorable Judge Patti B. Saris in Boston for consolidated and coordinated pre-trial proceedings in federal court there. *See generally In re: Pharmaceutical Industry Average Wholesale Pricing Litigation*, MDL 1456 (D. Mass.).

Like the many other AWP actions, this case also belongs in federal court, because plaintiff's state law claims for recovery of certain Medicare-related payments depend on the meaning of "AWP" under the federal Medicare statute and regulations, thus raising a substantial question of federal law that gives rise to federal jurisdiction. When this case was initially filed, defendants could not have removed this action in good faith because of a previous ruling by Judge Saris in a virtually identical case involving state law claims brought by other state attorneys general. *See State of Montana v. Abbott Lab.*, 266 F. Supp. 2d 250, 256 (D. Mass. 2003). Applying First Circuit precedent that was binding on her, Judge Saris ruled that even though state law claims like plaintiff's seeking recovery for Medicare-related payments present a substantial federal question, such claims were not removable under *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808 (1986), because the Medicare statute creates no private cause of action. *Montana*, 266 F. Supp. 2d at 256. Had defendants removed this case when it was filed, the JPML would have transferred the case to Judge Saris, and she would have been bound by the law in her circuit and her prior decisions to remand the case.

In June, the Supreme Court rejected the First Circuit's and Judge Saris' interpretation of *Merrell Dow*, and held that a state law claim requiring the interpretation of a federal statute can create federal jurisdiction, even though the federal statute at issue does not create a private cause of action. *See Grable & Sons Metal Prods., Inc*. v. *Darue Eng'g. & Mfr*., 545 U.S. ___, 125 S. Ct. 2363 (June 13, 2005). The *Grable* decision thus eliminated the barrier to removing this case that existed in the First Circuit. Within thirty days of receiving the *Grable* decision, defendants removed this and ten other similar cases pursuant to 28 U.S.C. § 1446(b), which allows actions that were not removable when originally filed to be removed within thirty days of receiving an "order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Plaintiff's argument that removal was untimely should be rejected. The plain language of section 1446(b) and persuasive case law confirm that an intervening Supreme Court decision such as *Grable* constitutes an "order or other paper" that triggers the right to remove. Because defendants removed within thirty days of receiving the *Grable* decision, removal was timely. Furthermore, because one removing defendant had not yet been served when the notice of removal was filed, removal was timely for a second and independent reason.

There is no merit to plaintiff's alternative argument that removal should be denied because *Grable* made no change to controlling law. In holding that there is no "private cause of action" requirement for removal, *Grable* explicitly resolved a split in the circuits. In doing so it eliminated the sole ground on which Judge Saris had remanded virtually identical claims and for the first time made the instant case removable.

Finally, plaintiff's state law claims fall squarely within this Court's federal question jurisdiction. Though emphasizing that it has pled "exclusively state law theories," Pl.

Br. 12, plaintiff has clearly asserted claims that depend on the meaning of AWP under the federal Medicare law, thus presenting a substantial federal question that gives rise to federal question jurisdiction. Specifically, plaintiff seeks to recover its expenditures for Medicare Part B co-payments which were set on the basis of AWP. Judge Saris has already ruled that such state law claims depend on the meaning of AWP under the federal Medicare statute, and thus present a federal question. *See Montana*, 266 F. Supp. 2d at 255. That conclusion is squarely in accord with the Supreme Court's recent decision in *Grable*. *See* 125 S. Ct. at 2368.

Because removal was timely and federal question jurisdiction exists over plaintiff's claims, plaintiff's remand motion should be denied. Defendants respectfully submit, however, that for the sake of consistency and efficiency, this Court should refrain from ruling on plaintiff's remand motion, and should instead stay this matter pending a ruling by the JPML on whether this case and ten others like it should be transferred to Judge Saris for pre-trial proceedings. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Expedited Ruling on Plaintiff's Motion to Remand and in Support of Defendant's Motion To Stay Reconsideration of Plaintiff's Motion to Remand ("Def. Stay Motion").

## STATEMENT OF THE CASE

### A. Role of "AWP" Under Federal Medicare Statute for Drug Reimbursement

The federal Medicare program provides health insurance to individuals age 65 and older and to other qualifying individuals. *See* 42 U.S.C. §§ 1395-1395pp. The Medicare program is administered by the Center for Medicare and Medicaid Services ("CMS"), a branch of the Department of Health and Human Services ("HHS"). Congress has authorized the Secretary of HHS to promulgate regulations setting limits on the levels of costs that Medicare will reimburse. *See Montana*, 266 F. Supp. 2d at 252.

Part B of Medicare covers, *inter alia*, certain categories of outpatient drugs, including physician-administered drugs ("Covered Drugs"). *See* 42 U.S.C. § 1395k(a)(1). Part B generally covers 80 percent of the allowable amount for a particular medical service or pharmaceutical. 42 U.S.C. § 1395l(o). The beneficiary must cover the remaining 20 percent as a co-payment. Covered Drugs dispensed before January 1, 2004, were reimbursed at "the lower of the actual charge on the Medicare claim for benefits or 95 percent of the national average wholesale price of the drug or biological." 42 C.F.R. § 405.517(b); 42 U.S.C. § 1395u(o) (setting reimbursement rate at 95 percent for Covered Drugs "furnished before January 1, 2004"). *See also Montana,* 266 F. Supp. 2d at 252-53 (discussing relationship between federal Medicare statute and AWP).[1] Although the federal Medicare statute based reimbursements for Medicare Part B drugs on AWPs for many years, neither the statute nor its implementing regulations defined the term or established a process by which AWPs are set. *See Montana*, 266 F. Supp. 2d at 252-53.

The Medicaid program is a joint state-federal program that provides medical care, including in many cases coverage for prescription drugs, to a state's indigent population. *See generally* 42 U.S.C. §§ 1396-1396v. State Medicaid programs reimburse pharmacists and other providers for dispensing drugs. *See* 42 U.S.C. § 1396a(a)(54). State Medicaid programs also cover some of the health care costs of Medicare beneficiaries who also qualify for Medicaid benefits ("dual eligibles"). *See* 42 U.S.C. § 1396a(a)(10)(E). This assistance often includes covering part or all of the 20 percent co-payment that "dual eligible" individuals must pay for

---

[1] As of January 1, 2005, the reimbursement formula for Medicare Part B Covered Drugs no longer depends on "AWP". *See* 42 U.S.C. § 1395u(o)(1)(C). For purposes of plaintiff's Complaint, the relevant reimbursement formula for Medicare Part B benefits was the one described above, which was in effect for drugs dispensed before January 1, 2004.

Medicare Covered Drugs. *See* 42 U.S.C. § 1396a(a)(10)(G). The amount of these co-payments thus depends on the meaning of the term AWP under the federal Medicare statute.

### B. The Alabama Action

On January 26, 2005, the State of Alabama filed a complaint in Circuit Court of Montgomery County, Alabama, against dozens of pharmaceutical manufacturers. The Complaint alleges that each defendant drug manufacturer caused Alabama's Medicaid program to overpay for pharmaceutical products by reporting inflated AWPs and other pricing information on which Alabama's Medicaid program bases its reimbursement rates for prescription drugs. Cplt. ¶¶ 107-19. In particular, the Complaint alleges that for Alabama Medicaid beneficiaries who are also qualified to receive federal Medicare benefits, Alabama Medicaid pays the Medicare beneficiaries' 20 percent co-payment under Medicare Part B, which until recently was based on AWP. Cplt. ¶¶ 109-10; *see also* 42 U.S.C. § 1395l(a); 1395u(o). The State further alleges that by reporting inflated AWP pricing information, each defendant has caused the Alabama Medicaid program to make inflated Medicare Part B co-payments. Cplt. ¶ 3. The State seeks to recover the amounts it allegedly overpaid for such Medicare co-payments. *Id.* The State asserts claims for fraudulent misrepresentation, fraudulent suppression, wantonness, and unjust enrichment and seeks various legal and equitable remedies.

Defendants removed this case to this federal court on July 13, 2005, within thirty days of their receipt of the Supreme Court's decision in *Grable,* which made this lawsuit removable for the first time. Removal also was timely because one defendant, GlaxoSmithKline plc, has not yet been served. Pursuant to MDL Rule 7.5(e), defendants filed a Notice of Related

Action ("Tag-Along Notice") with the JPML on July 15, 2005,[2] designating this case as a related action to the other AWP cases that have already been transferred to the AWP MDL[3]

### C. The Multidistrict Litigation Proceeding

Plaintiff's claims are virtually identical to claims brought in dozens of other AWP cases around the country – including cases brought by other states – that have already been transferred to the AWP MDL pending before Judge Saris. In April 2002, the JPML transferred sixteen then-pending AWP cases to Judge Saris for coordinated or consolidated pretrial proceedings because "[c]entralization of all actions . . . in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation [and] avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *See In re: Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378, 1380 (J.P.M.L. 2002). Since April 2002, the JPML has transferred thirty-four AWP cases to Judge Saris. *See generally* Def. Stay Motion at 6 & n.8.

Among the actions that were transferred to the AWP MDL were four cases brought by the States of Minnesota, Montana and Nevada.[4] Like the Alabama action, those cases alleged that the defendants violated state statutes and state common law by reporting inflated

---

2 An amended tag-along notice was filed on July 18, 2005.

3 The JPML enters a conditional transfer order automatically after the Clerk of the Panel is notified of a "tag-along action." These orders become final within fifteen days unless the plaintiff files an objection. *See* MDL Rule 7.4.

4 Nevada filed two separate suits, each substantively identical but against different defendants.

AWPs and thereby increasing the amount of Medicare Part B co-payments.[5] All four cases were originally filed in state courts, but defendants removed them on the ground that the state law claims asserted raised a substantial federal question with respect to the meaning of AWP under the federal Medicare statute and regulations. *See Montana*, 266 F. Supp. 2d at 254-55.

Judge Saris found that state law claims seeking to recover for Medicare co-payments present a federal question because they "require a determination of whether the AWPs reported by [defendant] comport with the meaning of AWP under the Medicare statute." *Montana*, 266 F. Supp. 2d at 255. Specifically, she concluded that "proof of a discrepancy between the AWPs reported by" defendants and "the meaning of AWP under the Medicare statute" is "an essential element" of plaintiffs' state law claims. *Id*. Judge Saris further observed that claims requiring "[t]he adjudication of … the term 'average wholesale price' in the Medicare statute" implicate an important federal interest because they "could have broad implications for Medicare reimbursements and co-payments." *Id.*

Despite her conclusion that state law claims that depend on the federal Medicare statute raise a federal question, Judge Saris ruled that removal of such claims was barred because that statute did not create a federal private cause of action. *See id*. at 256 ("Under *Merrell Dow*, where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute must provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain.") Judge Saris recognized that there was a split in the circuits over whether a statutory cause of action was a prerequisite to federal question jurisdiction. *See id.* at 256-57. Because the absence of a private cause of action under the Medicare statute was dispositive

---

[5] In these cases, the States sought to recover such payments on behalf of their Medicare beneficiaries.

under First Circuit precedent, Judge Saris remanded the Minnesota lawsuit.[6] On a motion to reconsider, Judge Saris again ruled that she was bound by the First Circuit's interpretation of *Merrell Dow*. *See Minnesota v. Pharmacia Corp.,* 278 F. Supp. 2d 101 (D. Mass. 2003).[7]

On June 13, 2005, the Supreme Court held in *Grable* that a federal statute need not create a private cause of action in order for a state law claim requiring the interpretation of that federal statute to give rise to federal jurisdiction. *See* 125 S. Ct. at 2370 ("*Merrell Dow* cannot be read … [to convert] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one.") (footnote omitted). *Grable* thus eliminated the reason Judge Saris had remanded the Minnesota action. Within thirty days of receiving the *Grable* decision, defendants removed this case and ten other similar AWP cases pending in courts around the country. All of these cases are awaiting transfer to the AWP MDL.[8] Upon transfer to the AWP MDL, these cases will afford Judge Saris the opportunity to determine whether they are removable in light of the Supreme Court's subsequent decision in *Grable*.

---

6 Judge Saris found alternative grounds for federal jurisdiction in the Montana case and one of the Nevada cases. *See State of Montana v. Abbott Lab.*, 266 F. Supp. 2d 250, 257-60 (D. Mass. 2003). The other Nevada suit was remanded because one defendant did not timely consent to removal. *Id.* at 260-63.

7 Relying on these decisions, Judge Saris subsequently remanded seven suits brought by the States of Connecticut and New York. *State of Connecticut v. GlaxoSmithKline plc, et al.,* Civ. No. 01-12257-PBS (D. Mass. Sept. 30, 2003).

8 As defendants explained in their motion to stay proceedings on plaintiff's remand motion, ten district courts in prior AWP lawsuits issued stays and declined to rule on remand motions pending potential transfer to Judge Saris. *See* Def. Stay Motion at 7-8. There are special and compelling circumstances why Judge Saris, who has been handling the AWP litigation for more than three years, should be permitted to address the remand motion that has been filed in this case. Having already decided that state law claims to recover Medicare co-payments present a substantial federal question, Judge Saris is uniquely qualified to decide whether *Grable* requires her to amend her prior ruling on the jurisdictional issue. *See id.* at 11-12.

## ARGUMENT

Removal is an important statutory right that Congress has expressly granted to defendants in specified classes of case. Despite plaintiff's rhetoric about its right to choose its forum and "strict construction" of the removal statute, courts and commentators alike have recognized that "if the requirements of the removal statute are met, the right to remove is absolute." 16 James W. Moore et al., *Moore's Federal Practice and Procedure* § 107.05 at 107-25 (3d ed. 2000). Accordingly, a federal court should "'be cautious about remand, lest it erroneously deprive a defendant of the right to a federal forum.'" *Bolling v. Union National Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995) (Albritton, J.) (quoting 14A Charles A. Wright et al, *Federal Practice & Procedure* § 3721, at 218-19 (2d ed. 1985)); *see McPhillips v. Blue Cross & Blue Shield of Alabama*, 79 F. Supp. 2d 1325, 1327 (M.D. Ala. 2000) (Albritton, J.) ("The removal statutes by their very nature take away a plaintiff's power to choose his forum in limited cases and defendants have an absolute right to remove cases over which a federal court would have had original jurisdiction. . . ."). As we demonstrate below, plaintiff has not identified sufficient grounds to deny defendants their statutory right to a federal forum.

### I. DEFENDANTS' REMOVAL WAS TIMELY BECAUSE THE SUPREME COURT'S DECISION IN *GRABLE* IS AN "ORDER OR OTHER PAPER" UNDER SECTION 1446(b).

Defendants timely removed plaintiff's action to federal court. Under the federal removal statute, a case that was not removable at the time it was filed can later be removed within thirty days of receiving an "order or other paper" from which it can first be ascertained that the case has become removable. *See* 28 U.S.C. § 1446(b). Plaintiff agrees that this case was not initially removable, Pl. Br. 5 n.2, but contends that removal was untimely because the *Grable* decision did not qualify as an "order or other paper" that triggered defendants' right to remove. Specifically, plaintiff contends that the term "order or other paper" in section 1446(b) is limited

to orders and papers that are generated within the underlying state court proceeding that has been removed. Pl. Br. 7. However, both the plain language of section 1446(b) and persuasive case law construing the statute reject this view, and confirm that the *Grable* decision constituted an "order or other paper" that gave defendants an additional thirty days to remove this case. The district court decisions from other jurisdictions on which plaintiff relies are neither authoritative nor persuasive and they should not be followed.

**A. The Plain Language Of Section 1446(b) Confirms That A Supreme Court Decision Can Trigger A Defendant's Right To Remove.**

The plain language of Section 1446(b) supports defendants' view and cannot be squared with the "order-or-paper-within-the-state-court-proceeding" limitation urged by plaintiff. The relevant provision reads:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, ***order or other paper from which it may first be ascertained that the case is one which is or has become removable,*** except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (second paragraph) (emphasis added).

By its terms, Section 1446(b) imposes two express limits on a defendant's right to invoke this thirty-day removal provision after receiving an "order or other paper": (i) the "order or other paper" must be one "from which it may ***first be ascertained***" that the case has become removable, and (ii) the provision may not be invoked in a diversity case that has been pending for more than a year. *Id.* Both requirements are satisfied here. Though plaintiff contends otherwise, the Supreme Court's decision in *Grable* was the first document from which it could be ascertained that this case was removable, as we detail in Part III below. And because removal is predicated on the presence of a substantial federal question, not diversity, the statute's one-

year limitation in diversity cases does not apply. Defendants' removal notice was therefore proper under the plain language of the statute.

Beyond these two limits, the statute is silent about the circumstances in which non-removable actions may subsequently be removed. Plaintiff, however, would read into section 1446(b)'s express limitations a further ***implicit*** limitation that restricts the term "order or other paper" to one that was "generated within the specific state proceeding to be removed." Pl. Br. 7. The short answer to this argument is that Congress did not write the statute that way. When a party's interpretation of a statute "depends upon the addition of words to a statutory provision which is complete as it stands, [a]doption of [that] view would require amendment rather than construction, and it must be rejected . . .." *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 463 (1987).[9] Had Congress intended to limit the removal right in this way, it could have accomplished this simply by adding, after the words "order or other paper," the phrase "that is generated within the state court proceeding," or some similar language. But Congress imposed no such limitation on this important statutory right, and the rule that the removal statute be construed narrowly does not give a court license to "reword the statute to make it read this way." *Sasser,* 126 F. Supp. 2d at 1376; *see 17th Street Assoc*. v. *Markel Int'l Ins. Co*., 373 F. Supp. 2d 584, ___ (E.D. Va. 2005) ("federal courts must not interpret removal statutes [] so strictly as to overwhelm the very right that they are intended to confer and the

---

[9] *See Sasser* v. *Ford Motor Co*., 126 F. Supp. 2d 1333, 1336 (M.D. Ala. 2001) ("If Congress had wanted [the one-year limitation on removal of diversity cases in] § 1446(b) to be claim or party specific, it could have worded the provision to make it so. . . . Because Congress did not do this, the court should not reword the statute to make it read this way.")

federal interests that they were designed to protect").[10] Doing so would be particularly inappropriate here, because where Congress enumerates express limitations on the scope of statutory language, as it did in section 1446(b), additional limitations should not be implied. *See generally* 2A Norman J. Singer, Sutherland Statutes and Statutory Construction §§ 47:11, 47:23 (6th ed. 2005).

### B. Federal Courts Have Held That A Controlling Court Decision Can Trigger The Right To Remove Under Section 1446(b), And Have Not Accepted Plaintiff's View That An "Order Or Other Paper" Must Be Generated In The Underlying State Litigation.

Plaintiff's remand motion skims past the removal statute's language and instead focuses on a handful of (mostly dated) district court decisions construing the statute. *See* Pl. Br. 6-9. Significantly, there are no circuit court or Supreme Court decisions supporting plaintiff's view, so the issue certainly is not settled. We explain below in Part I.C. why the district court decisions cited by plaintiff are not persuasive. Remarkably, however, plaintiff never mentions the two more recent appellate decisions that confirm that a decision in a different case can give rise to the right to remove under section 1446(b). Those two cases, as well as persuasive district court decisions interpreting section 1446(b), demonstrate that plaintiff's interpretation of "order or other paper" as restricted to those generated within the state court proceeding is not correct.

In a leading decision addressing this issue, the Third Circuit considered whether a defendant could remove a state court case under section 1446(b) within thirty days of receiving a copy of a Supreme Court decision in a different case that clarified, for the first time, that the state court case was removable. *See Doe v. American Red Cross,* 14 F.3d 196 (3d Cir. 1993).

---

10 "The duty 'to exercise jurisdiction where it is conferred, and not to usurp it where it is not conferred, are of *equal* obligation.'" *17th Street Assoc.,* 373 F. Supp. 2d at ____ (quoting *Bank of the United States v. Deveaux,* 9 U.S. (5 Cranch) 61, 87 (1809) (Marshall, C.J.)).

Defendant Red Cross had initially removed the case based on a "sue or be sued" provision in its federal statutory charter, but the federal district court concluded that this provision did not create federal jurisdiction and remanded the case. A short time later, however, the Supreme Court held, in a different proceeding involving the Red Cross, that the "sue or be sued" provision in the Red Cross charter did in fact give rise to federal jurisdiction.[11] Within thirty days of receiving the Supreme Court's decision, the Red Cross removed the *Red Cross* case for a second time, arguing that the intervening Supreme Court decision was an "order" under section 1446(b). The Third Circuit agreed. It held that because the Supreme Court decision clarified that the *Red Cross* case was removable, that decision had triggered the defendant's thirty-day removal clock under the second paragraph of section 1446(b), and removal based on the intervening Supreme Court decision was therefore proper. *Id*. at 202-03.

The Fifth Circuit has also decided "[t]he question whether a decision in an unrelated case can serve as the basis for removal under § 1446(b)." *Green v. R.J. Reynolds Tobacco Co.,* 274 F.3d 263, 266 (5th Cir. 2001). In *Green*, defendants sought removal on the ground that the lone non-diverse defendant had been fraudulently joined, but the federal district court remanded after ruling that the plaintiffs had a viable state law claim against the non-diverse defendant. After the remand, the Fifth Circuit ruled in a different case that the state law claim at issue was preempted by federal law – confirming, as the defendants had originally contended, that the case was in fact removable. Within thirty days of receiving that decision, the defendants removed the *Green* case for a second time on the ground that the intervening judicial decision was an "order or other paper" under section 1446(b). Adopting the Third Circuit's reasoning in

---

[11] *See American Nat'l Red Cross v. S.G.,* 505 U.S. 247 (1992).

*Red Cross*, 274 F.3d at 267-68, the Fifth Circuit concluded that because the intervening decision from another case clarified, for the first time, that the *Green* case was removable, the defendants had properly removed under section 1446(b) within thirty days of receiving that decision. *Id*. *See also Young v. Chubb Group of Ins. Cos.,* 295 F. Supp. 2d 806, 807-08 (N.D. Ohio 2003) (following *Red Cross* and *Green* in holding that an intervening decision in a different case is an order under section 1446(b)).

*Red Cross* and *Green* thus reject both premises of plaintiff's timeliness argument. First, they make clear that an "order or other paper" need not be generated in the underlying state proceeding in order to trigger the removal right under section 1446(b). Second, they confirm that an intervening judicial decision in a different case that renders a non-removable case removable can constitute an "order or other paper" under section 1446(b).

Plaintiff may argue that this case is different because the defendants in *Red Cross* and *Green* were also parties to the intervening judicial decisions that triggered the removal right. This fact does not undermine the point that *Red Cross* and *Green* completely defeat plaintiff's contention that the order or other paper must be generated in the suit that is removed. While the decisions in *Red Cross* and *Green* addressed the facts that were before them, where the parties were the same, those cases clearly establish that § 1446(b) is not confined to cases where the order or other paper is generated in the action that is removed. *Red Cross* and *Green* demonstrate that an event outside the case that is removed can trigger the right to removal. Moreover, both courts made clear that the "same defendant" consideration was relevant only to their interpretation of the term "order." *See Red Cross,* 14 F.3d at 201-02 ("we are construing only the term 'order' as set forth in section 1446(b)"); *Green* 274 F.3d at 268 (same). The two cases did not endorse a "same defendant/same issue" limitation on the broader term "other

paper," or hold that removal is inappropriate in a case like this, where the intervening judicial decision removes the barrier to removal that existed at the time the case was filed.

Rather, as several district courts have confirmed, the phrase "order or other paper" applies in the very circumstances present here, where a decision in an unrelated case permits a defendant to ascertain, for the first time, that a case has become removable. In *Davis v. Time Ins. Co.*, 698 F. Supp. 1317 (S.D. Miss. 1988), the court denied a motion to remand, noting that there is "'no difference between a situation where an amended complaint adds a new federal question and one where a recent United States Supreme Court decision invigorates a pleading with federal character. In both instances, a federal basis is supplied where previously none was.'" *Id.* at 1322 (quoting *Perkins v. Time Ins. Co.*, No. H87-101(W) (S.D. Miss. July 29, 1988)). Similarly, in *Smith v. Burroughs*, 670 F. Supp. 740 (E.D. Mich. 1987), the defendant removed a state court action after a Supreme Court decision in an unrelated case clarified that the claims were removable. Focusing on the plain language of the statute, the court observed that section 1446(b) "on its face indicates that it covers virtually any situation in which an action not initially removable later becomes removable." *Id.* at 741. The court accordingly held that removal based on the intervening Supreme Court decision was proper.[12] Likewise, in *Winningkoff v. American Cyanamid,* No. Civ. A. 99-3077, 2000 WL 235648 (E.D. La. March 1, 2000), the court held that a defendant properly removed a case after the Louisiana Supreme Court clarified, in an unrelated

---

[12] A different judge on the same court held otherwise in *Kocaj v. Chrysler Corp.,* 794 F. Supp. 234, 237 (E.D. Mich. 1992) (concluding that a document must be generated in the underlying state court action in order to give rise to removal under section 1446(b)). *Kocaj* reflects a disagreement between two co-equal judges on the same court concerning the interpretation of a statute, not, as plaintiff asserts, a decision by "the Eastern District of Michigan" to "abandon[]" *Smith*. Pl. Mem. 9. In any event, as demonstrated in the text, the rationale in the contrary *Kocaj* opinion was subsequently rejected by the Third and Fifth Circuits in *Red Cross* and *Green*, which held that the right to remove can be triggered by a decision in a different case. *See also* Section I.C, *infra*.

case, that the claims at issue were removable. Citing *Red Cross*, the court concluded that "the Louisiana Supreme Court's decision . . . was an 'order' from which the Defendants first ascertained that the case was re-removable." *Id*. at *4. In each of these cases, the removing defendant was not a party to the appellate case that opened the door to removal.

Although plaintiff disparages these cases as a misguided minority, they in fact are consistent with the two relevant appellate decisions in *Red Cross* and *Green.* Furthermore, they employed a straightforward, plain language approach that was faithful to the text of the statute to conclude that a controlling appellate decision in another case can constitute an "order or other paper" under section 1446(b).

Defendants' position is also supported by the district court's "*en banc*" decision in *Greer v. Skilcraft,* 704 F. Supp. 1570 (N.D. Ala. 1989), which was authored by Chief Judge Pointer and joined by eight other members of that Court. At issue in *Greer* was the effect on pending cases of the Judicial Improvements and Access to Justice Act (the "Act"). *See* P.L. 100-702, 102 Stat. 4642 (1988). Among other things, the Act provided that the citizenship of fictitious "Doe" defendants must be disregarded for removal purposes, and within 30 days of the effective date of the Act, many cases were removed to the district court under section 1446(b) on the ground that this change in law had made previously non-removable cases removable. After a detailed analysis, the Court first held that the Act applied to cases that were pending at the time the statute went into effect. *Greer,* 704 F. Supp. at 1577-78. Significantly for the instant case, the Court then concluded that this change in law triggered the thirty-day removal window under section 1446(b). *See id*. at 1581-82; *id*. at 1583 (discussing "cases that are removed on the basis of the change of law made by Section 1016(a)"). The Court acknowledged that "the change in law did not result in receipt of a jurisdiction-creating document," but emphasized that "the

practical equivalent of the receipt of such a document in the case may start the 30-day period." *Id*. at 1581-82. Under the Court's analysis, therefore, a case that was commenced in March 1988 could be properly removed nine months later on December 16, 1988, because removal was effected within thirty days of the change in law accomplished by the statute. *Id*. at 1582-83.

*Greer* thus confirms that the term "other paper" in section 1446(b) can apply to a range of documents – including an act of Congress – provided that the document puts a defendant on notice that a previously non-removable case has become removable. For the narrow purpose of determining removability under section 1446(b), there is no principled distinction between a change of law that is accomplished through statute, as in *Greer*, and one that is effected through a decision of the Supreme Court, as here. However, under plaintiff's overly narrow view of section 1446(b), not even an Act of Congress could trigger the 30 days for removal under section 1446(b) of an initially non-removable case, because the new statute would not be an order or other paper generated in the case. As *Greer* demonstrates, plaintiff's view is wrong.

### C. The Contrary Decisions Relied On By Plaintiff Are Neither Authoritative Nor Persuasive.

Plaintiff cites nine district court cases from other jurisdictions in support of its argument that a controlling Supreme Court decision cannot be an "order or other paper" under section 1446(b). *See* Pl. Br. 7-8. All of those district court decisions pre-date the Fifth Circuit's decision in *Green*, and most of them were decided without the benefit of the Third Circuit's decision in *Red Cross*. Because the reasoning of those earlier district court decisions has effectively been repudiated by the appellate decisions in *Red Cross* and *Green*, they should not be followed here.

First, the principal rationale underlying those district court decisions has since been rejected by the Third and Fifth Circuit decisions that have addressed this issue. Like plaintiff here, most of the cited cases incorrectly imposed the extra-textual interpretation of section 1446(b) that an "order or other paper" must be generated within the underlying state court proceeding.[13] *See also* Pl. Br. 8 (arguing that section 1446(b) should apply only to events that occur "within the proceeding itself"). As discussed above, that constricted reading finds no support in the text of the statute and is in direct conflict with the decisions in *Red Cross* and *Green*, which sustained removal on the basis of decisions that were not generated in the underlying state court proceedings. The district court cases to the contrary cited in plaintiff's brief are neither authoritative nor persuasive and should not be followed.

Second, many of the district court cases relied on by plaintiff erroneously reasoned that only a "voluntary act" by a plaintiff can create a removal right under section 1446(b),[14] an argument that plaintiff echoes in its remand motion. *See* Pl. Br. 8, 9 n.6 (arguing that a plaintiff's "voluntary act" makes an action removable under section 1446(b)). The

---

[13] See *Kocaj,* 794 F. Supp. at 237 (document must be "a paper in the state court action"); *Johansen v. Employee Benefit Claims, Inc.,* 668 F. Supp. 1294, 1296 (D. Minn. 1987) (endorsing view that document must be "generated within the state court litigation itself"); *Lozano v. GPE Controls,* 859 F. Supp. 1036, 1038 (S.D. Tex. 1994) (section 1446(b) applies only to "papers that are generated within the specific state proceeding which has been removed"); *Avco Corp. v. Local 1010 of the Int'l Union,* 287 F. Supp. 132, 133 (D. Conn. 1968) (removal right only triggered by "papers filed in the action itself"); *Gruner v. Blakeman,* 517 F. Supp. 357, 361 (D. Conn. 1981) (same); *Morsani v. Major League Baseball,* 79 F. Supp. 2d 1331, 1333 (M.D. Fla. 1999) (same).

[14] *See Hollenbeck v. Burroughs Corp.,* 664 F. Supp. 280, 281 (E.D. Mich. 1987) (section 1446(b) "conditions removability on voluntary actions of a plaintiff"); *Holiday v. Travelers Ins. Co.,* 666 F. Supp. 1286, 1290 (W.D. Ark. 1987) (endorsing view that "the change of circumstances rendering the case removable must be something that was voluntarily done by the plaintiff") (citation omitted); *Morsani*, 79 F. Supp. 2d at 1333 & n.5.

"voluntary/involuntary act" rule, as Wright & Miller explain, is a court-made rule of procedure in federal diversity cases:

> Under the "voluntary/involuntary" rule, if a jurisdictional spoiler is dismissed from the case by the voluntary act of the plaintiff then the case becomes removable, but if the dismissal is a result of either the defendant's or the court's acting against the wish of the plaintiff then the case cannot be removed.

19A Charles A. Wright, et al., *Fed. Prac. & Proc. Juris. App. Fed. Jud. Code Revision* pt. III Rptr. note C (2004). The "voluntary/involuntary" rule has no application here. As the reference to "dismiss[al]" of a "jurisdictional spoiler" implies, this rule applies only to diversity cases, not to cases such as this where federal jurisdiction is based on the presence of a federal question. Applying that rule here would in any event be flatly inconsistent with *Red Cross* and *Green*, where the intervening judicial decisions in other cases that provided the basis for removal under section 1446(b) were in no respect the product of a "voluntary act" by the plaintiffs in the state cases being removed.

Finally, several of the cases cited by plaintiff are distinguishable because they involved grounds of decision that are not present here. For example, some cases addressed situations where removal was untimely because the claims at issue were removable when initially filed.[15] In those cases, removal was untimely because the claims were not "initially non-removable" as is required to invoke section 1446(b). Here, in contrast, this case was not removable when it was filed, due to the previous ruling by Judge Saris in *State of Montana*. Other decisions cited by plaintiff concluded that the Supreme Court decision at issue did not

---

15 *See Holiday*, 666 F. Supp. at 1289 ("this court believes that the cases at bar were originally removable. Therefore, defendant's petitions for removal are untimely"); *Lozano*, 859 F. Supp. at 1038 (defendants were "clearly aware" of the disputed ground for removal "when they were initially served with the complaint").

change or clarify the law in a way that made the case removable.[16] The Supreme Court's recent decision in *Grable*, however, made clear that Judge Saris' previous removal decision in the *State of Montana* action had been incorrect. *See* Part III below.[17]

## II. REMOVAL IS ALSO TIMELY BECAUSE ONE DEFENDANT HAD NOT BEEN SERVED.

Removal was also timely for a second and independent reason. GlaxoSmithKline plc is a company organized under the laws of England and Wales that can be properly served only under the Hague Convention.[18] Although GlaxoSmithKline plc has notice of this action and joined in the notice of removal, it has not yet been properly served with process.[19] Removal is

---

[16] *See Hollenbeck*, 664 F. Supp. at 281-82 (ruling that plaintiff's complaint did not raise a removable federal claim even when construed under the new Supreme Court decision at issue); *cf. Morsani*, 79 F. Supp. 2d at 1334 n.8 (stating that the intervening Supreme Court decision "creates no new or renewed right or removal" but rather "refines a method for the computation of time pursuant to Section 1446(b)").

[17] After citing *Avco Corp. v. Local 1010 of the Int'l Union,* 287 F. Supp. 132 (D. Conn. 1968), in support of its "generated within the state court proceeding" argument, Pl. Br. 8, plaintiff then cites a Tenth Circuit opinion as "noting that *Avco* was rightly decided." *Id*., citing *O'Bryan v. Chandler*, 496 F.2d 403 (10th Cir. 1974). Plaintiff does not mention that in the very next paragraph, the Tenth Circuit wrote that "[t]his case is unlike *Avco*," and then decided the case on unrelated grounds. *O'Bryan*, 496 F.2d at 412. Both *Avco* and this 30-year-old dictum in *O'Bryan* preceded *Red Cross* and *Green* and therefore add nothing to plaintiff's argument. However, *O'Bryan* is of interest for a different reason. The U.S. Department of Justice filed an amicus brief in that case arguing that an unrelated Supreme Court decision, handed down while *O'Bryan* was pending, rendered the case removable under the "order or other paper" provision of section 1446(b) – precisely the point that defendants make here. *See id.* at 408.

[18] GlaxoSmithKline plc is distinct from SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, which is a U.S. corporation that has been served and has appeared in this action.

[19] GlaxoSmithKline plc reserves its arguments as to insufficient service. Joining in the removal of this action does not waive GlaxoSmithKline plc's objections to improper service. *See Pennebaker v. Kawasaki Motors Corp., U.S.A.*, 155 F.R.D. 153, 157 (S.D. Miss. 1994) (noting that "removing party such as [foreign defendant] does not waive objection to the mode of service of process solely by removing the case to federal court") (citation omitted); *Wesley v. Mississippi Transp. Comm'n*, 857 F. Supp. 523, 531 (S.D. Miss. 1994) (defendant does not waive objection to improper service by removing case to federal court); *Kerr v. Holland America-Line Westours, Inc.*, 794 F. Supp. 207, 213 n.6 (E.D. Mich. 1992) (filing of removal (continued…)

therefore timely because defendants' notice of removal was filed before the 30-day clock ran as to GlaxoSmithKline plc.

Under the removal statute, the time for removal is triggered by receipt of the complaint "through service or otherwise." *See* 28 U.S.C. § 1446(b) (first paragraph). Prior to the Supreme Court's decision in *Murphy Brothers., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), many courts had interpreted this language to mean that the 30 days could be triggered by receipt of a complaint by informal means other than actual service of process. *Id.* at 349 n.2. In *Murphy*, the Supreme Court expressly held that a defendant's 30 days to remove cannot begin prior to formal service of process. *Id*. at 347-48. The fact that the defendant in *Murphy* had received a "courtesy copy" of the complaint did not matter; until actually served with formal process, its time to remove did not run. *Id*. The Court based this result on the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* at 347; *see id.* at 350 ("[O]ne becomes a party, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.") (citation omitted).

Prior to *Murphy,* the courts were also split as to when the time for removal began to run in cases involving multiple defendants. The majority of courts followed the "first-served" rule, pursuant to which the clock for all defendants began to run from service upon the first defendant. *See, e.g.*, *Brown v. Demco*, 792 F.2d 478, 481-82 (5th Cir. 1986) (adopting first-served rule prior to Supreme Court's *Murphy* decision). A minority of courts, however, adopted

---

petition before being officially served does not constitute "implied acceptance of process" so as to preclude defendant from attacking validity of service of process after removal).

the "last-served" rule, pursuant to which ***each*** defendant has 30 days from the date that ***it*** was served with the complaint to seek removal. *See, e.g.*, *Garside by Garside v. Osco Drug Inc.*, 702 F. Supp. 19, 21 (D. Mass. 1988) (adopting "last-served" rule). Thus, under the "last-served" rule a subsequently served defendant – or, in the case of GlaxoSmithKline plc, an unserved defendant – cannot lose its right to remove simply because an earlier served defendant failed to timely remove a case.[20]

Since *Murphy*, a growing number of courts have adopted the last-served rule, recognizing that the first-served rule is inconsistent with the Court's rationale in *Murphy* and its heavy emphasis on the formal service of process as the event that triggers a defendant's obligation to take action with respect to a suit. If, as *Murphy* holds, a defendant is not required to take any action until properly served, that defendant's statutory right to remove cannot be extinguished by the inaction of other properly served defendants. Although the Eleventh Circuit has not yet addressed the issue, two appellate courts and numerous district courts have expressly adopted the last-served rule after the *Murphy* decision. *See Marano Enters. v. Z-Teca Restaurants*, 254 F.3d 753, 757 (8th Cir. 2001) (adopting last-served rule); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999) (same); *see also, e.g.*, *Piacente v. State Univ. of New York at Buffalo*, 362 F. Supp. 2d 383, 388-89 (W.D.N.Y. 2004) (same); *Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 342-43 (D.N.J. 2001) (same). The Eighth Circuit, for example, observed that *Murphy* strongly "portended" that the Court would favor the last-served rule. *Marano Enter.*, 254 F.3d at 756 ("We conclude that if faced with the issue before us today, the Court would allow each defendant thirty days after receiving service

---

[20] The cases cited in footnote 19, *supra*, demonstrate that a defendant that has not been officially served may remove.

within which to file a notice of removal, regardless of when – or if – previously served defendants had filed such notices."). Although judges in the Middle District of Alabama have issued opinions continuing to follow the first-served rule post-*Murphy*,[21] defendants respectfully submit that those decisions are inconsistent with *Murphy*. Moreover, the Eleventh Circuit has not ruled on the issue, and accordingly there is no controlling authority binding this Court on the issue.

Both the plain language of 28 U.S.C. § 1446(b) and fairness considerations support the last-served rule. Section 1446(b) requires that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant" of the complaint. As the Sixth Circuit observed, to hold "that the time for removal commences for all purposes upon service of the first defendant would require us to insert 'first' before 'defendant' into the language of the statute." *Brierly*, 184 F.3d at 533. As for fairness, the first-served rule "would make it possible for a great injustice to take place" because defendants' statutory removal rights "could be rather easily overcome by tactical maneuvering by plaintiffs." *McKinney*, 955 F.2d at 928.

Under the last-served rule, GlaxoSmithKline plc's removal is timely in this case. Even though it has had informal notice of the action, GlaxoSmithKline plc's deadline for removal has not yet run because it has not been formally served with process. *Murphy*, 526 U.S. at 347-48. Under the last-served rule, GlaxoSmithKline plc's right to remove cannot be forfeited simply because previously served defendants did not remove the case.

---

[21] *See Adams v. Charter Communications,* 356 F. Supp. 2d 1268, 1271 (M.D. Ala. 2005) (J. Fuller); *Jerrell v. Kardoes Rubber Company, Inc.,* 348 F. Supp. 1278, 1283 (M.D. Ala. 2004) (J. McPherson).

Where the last-served rule applies, as should be the case here, previously served defendants remain free to consent to a later-served defendant's removal petition even if they themselves did not seek removal within the applicable 30-day period. Otherwise, because removal requires the unanimous consent of all defendants,[22] the later-served defendants would lose their right to remove even though they had not yet been served, a result that the *Murphy* court rejected. *See Brierly*, 184 F.3d at 533 n.3 ("We conclude that a first-served defendant can consent to a later-served defendant's removal petition, despite having already failed in its own efforts to remove [because] holding otherwise would vitiate the removal petition of the later-served defendants and thereby nullify our holding that later-served defendants are entitled to 30 days to remove the case"); *see also Marano Enters.*, 254 F.3d at 757 (previously served defendants can consent to removal even though they did not file a removal petition within 30 days of being served). Here, all previously served defendants properly consented by joining in the notice of removal. Thus, because GlaxoSmithKline plc's time for removal had not yet run, removal by all defendants was timely for a second reason that is wholly independent from the *Grable* decision.

## III. *GRABLE* PROVIDED THE FIRST GOOD FAITH BASIS TO REMOVE THIS CASE.

Plaintiff asserts that even if the *Grable* decision is an "order or other paper" under section 1446(b), removal was still improper because *Grable* did not change controlling law, and thus is not a paper "from which it may first be ascertained that the case is one which is or has become removable." Pl. Br. 10-11. According to plaintiff, *Grable* merely held that in the unique circumstances of a state law quiet title action that turned on the interpretation of federal tax law,

---

[22] *See Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002).

the absence of a federal remedy did not preclude federal question jurisdiction. *Id*. But the Supreme Court did more than simply consider whether federal jurisdiction existed over a state law quiet title action; it granted certiorari in *Grable* "on the jurisdictional question alone" in order to "resolve a split among the Courts of Appeals on whether *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, always requires a federal cause of action as a condition for exercising federal-question jurisdiction." *Grable*, 125 S. Ct. at 2366.

In light of the unique posture of the instant case, the Court's resolution of this jurisdictional question – over which the circuits were split – created the new ground for removal here. When this case was filed, Judge Saris had ruled that state law claims such as plaintiff's that depended on the meaning of AWP under the Medicare statute present a federal question. In considering earlier remand motions of three states, Judge Saris held that a "discrepancy between the AWPs reported by [defendants] and the meaning of AWP under the Medicare statute" was an "essential element" of the state law claims and thus "present[ed] a federal question." *Montana*, 266 F. Supp. 2d at 255. Yet despite the presence of a federal question, Judge Saris was required to rule that these claims did not support federal jurisdiction under the First Circuit's interpretation of *Merrell Dow*. *Id.* at 256 ("[W]here a state-law claim includes as a necessary element the violation of a federal statute, the federal statute must provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain."); *see id*. at 255-56 (explaining that the court was "bound by the Supreme Court's decision in *Merrell Dow*" and First Circuit decisions applying *Merrell Dow*) (citation omitted). In denying defendants' motion for reconsideration, Judge Saris reiterated her view that claims to recover certain Medicare payments were properly remanded because "[w]hile circuit caselaw is not unanimous on the sweep of *Merrell Dow*, the First Circuit and a number of other courts read *Merrell Dow* as an

instruction to remand state-law claims like Minnesota's, where the right to relief depends on the application of a federal statute that does not provide a private remedy." *Minnesota v. Pharmacia Corp.*, 278 F. Supp. 2d 101, 103 (D. Mass. 2003).[23]

Thus, at the time this case was filed, Judge Saris, who presides over the AWP MDL, had definitively ruled that state law claims, like plaintiff's here, to recover certain Medicare payments that depend on the meaning of AWP were not removable, even though they presented a federal question. *See Montana*, 266 F. Supp. 2d at 255; *Minnesota*, 270 F. Supp. 2d at 102-03. Had this case been removed when filed, defendant's counsel would have been required to notify the JPML,[24] and the JPML would have transferred the case to Judge Saris, as it has done with every other AWP case on which the Panel has ruled. Judge Saris then would have remanded the case, as she had already twice ruled that such claims are not removable under First Circuit precedent interpreting *Merrell Dow*. Under these circumstances, defendants plainly could not have removed this case in good faith when it was first filed.[25]

---

[23] The Defendants in the *Montana* proceeding were unable to appeal Judge Saris' decision because, under 28 U.S.C. § 1447(d), a district court's order remanding a case to state court is not appealable.

[24] *See* JPML rule 7.5(e) ("Any party or counsel in actions previously transferred under Section 1407 . . . ***shall properly notify*** the Clerk of the Panel of any potential "tag-along" actions in which that party is also named or in which that counsel appears." (Emphasis added.)

[25] Prior to *Grable*, the Eleventh Circuit had correctly ruled that a cause of action was not a prerequisite for a federal statute to give rise to federal question jurisdiction. *See City of Huntsville v. City of Madison,* 24 F.3d 169, 174 (11th Cir. 1994). Accordingly, if defendants had removed this case when it was initially filed, this Court could not have remanded it, the JPML would have transferred it to Judge Saris, and she would have remanded it under her prior rulings and First Circuit precedent. It is firmly established that on issues of federal law an MDL court must apply the law of the circuit in which it is located and not the law of the transferor court. *See Murphy v. F.D.I.C.,* 208 F.3d 959, 965-66 (11th Cir. 2000); *In re: Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (R.B. Ginsburg, J.), *aff'd,* 490 U.S. 122 (1989). The fact that this Circuit was on the correct side of the circuit split would have made no difference to the inevitable remand.

The Supreme Court's decision in *Grable* made it clear, however, that Judge Saris and the First Circuit were on the losing side of the circuit split that *Grable* resolved and that she had erred in interpreting *Merrell Dow* as requiring a federal cause of action as a necessary condition for asserting federal jurisdiction. The Supreme Court explained that a private cause of action was not necessary to confer federal-question jurisdiction over state law claims that raise a substantial federal question: "*Merrell Dow* cannot be read [as a] whole as . . . converting a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 125 S. Ct. at 2369-70.

*Grable* thus rejected the very ground on which Judge Saris denied federal question jurisdiction over state law claims that, like plaintiff's here, seek to recover Medicare Part B payments that depend on the meaning of AWP. *Grable* eliminated the sole barrier to removal, because the Supreme Court has made clear that the presence of a substantial federal question is sufficient to confer federal jurisdiction over a plaintiff's state law claims.

Plaintiff asserts in the alternative that *Grable* did not create a new basis for removal of this case because Eleventh Circuit precedent already held, prior to *Grable*, that a private right of action was not required to confer federal jurisdiction for state law claims that depended on federal law. Pl. Br. 10-11 (citing *City of Hunstville v. City of Madison*, 24 F.3d 169 (11th Cir. 1994)). Plaintiff's reliance on Eleventh Circuit precedent ignores the fact that Judge Saris' decision in the AWP-MDL – not Eleventh Circuit precedent – controlled the jurisdictional issue and prevented defendants from removing this action in good faith when it was filed. As discussed above, defendants could not have removed this case in good faith before the Supreme Court decided *Grable* because the case would have been transferred to Judge Saris, who had already made her view on the jurisdictional question clear. *See Montana*, 266 F. Supp. 2d at

256; *Minnesota*, 278 F. Supp. 2d at 102-03. Removal under those circumstances truly would have served no purpose other than delay and would have been an unjustifiable waste of the resources of the courts and the parties. *Grable* made removal possible for the first time because it rejected the reasoning of the AWP MDL decision that had previously barred removal. The fact that Eleventh Circuit precedent was on the "winning side" in *Grable* does not change that analysis.

## IV. PLAINTIFF'S STATE LAW CLAIMS TO RECOVER CERTAIN MEDICARE-RELATED PAYMENTS PRESENT A SUBSTANTIAL FEDERAL QUESTION GIVING RISE TO FEDERAL QUESTION JURISDICTION.

Plaintiff's final argument – that "there is no federal question at issue" with respect to state law claims that depend on AWP – has already been rejected in the AWP MDL. Pl. Br. 11. On this point, Judge Saris correctly held that "an essential element" of such state law claims "is proof of a discrepancy between AWPs reported by [the defendant] and the meaning of AWP under the Medicare statute" that "presents a federal question." *Montana*, 266 F. Supp. 2d at 255.

That ruling is plainly correct. State law claims "arise under" federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) (citation omitted); *see also Dunlap v. G&L Holding Group Inc.*, 318 F.3d 1285, 1290 (11th Cir. 2004) ("[E]ven when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if . . . his state-law claims raise substantial questions of federal law."). A federal issue is "essential" if that issue is "actually disputed and substantial," and is one that a "federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2368; *see also Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998) ("[F]ederal-question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action.").

As demonstrated below, and as Judge Saris previously held, state law claims to recover Medicare-related payments present a substantial federal question.

### A. The Meaning Of AWP Under The Federal Medicare Statute Is An "Essential Element" Of Plaintiff's State Law Claims That Is "Actually Disputed And Substantial."

Plaintiff's state law claims depend on a federal issue that is an "essential element" of those claims because it is "actually disputed and substantial." *Grable*, 125 S. Ct. at 2368. A federal issue "really and substantially involves a dispute or controversy respecting the validity, construction, or effect of [federal] law" when "the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." *Dunlap,* 381 F.3d at 1290 (citations omitted).

Two courts recently relied on *Grable* to find federal jurisdiction when the state law claim involved the interpretation of a federal regulatory regime very similar to the circumstances presented by plaintiff's state law claims. The First Circuit relied on *Grable* to conclude that federal question jurisdiction was proper over state law claims that depend on a state agency's "adherence to the intricate and detailed set of federal [housing] regulatory requirements, and the funds at issue are federal grant monies." *Municipality of San Juan v. Corporación Para El Fomento Económico De Law Ciudad Capital*, No. 04-2303, 2005 WL 1644942, at *4 n.6 (1st Cir. July 14, 2005) (citing *Grable*). Likewise, a district court recently recognized that, after *Grable*, in suits against pharmaceutical companies involving the operation of the Medicaid program, "the substantial federal funding provisions involved and the allegations about the violation of federal law" can give rise to federal question jurisdiction. *In re: Zyprexa*

*Prod. Liab. Litig.*, Nos. 04-MD-01596 (JBW), 05-CV-01455 (JBW), 2005 WL 1561346, at *2 (E.D.N.Y. July 1, 2005).[26]

Contrary to plaintiff's assertion that "the interpretation of 'Average Wholesale Price' or 'AWP' under the Medicare statute is . . . only one of many issues" that will determine its claims, Pl. Br. 12, the meaning of "AWP" under the Medicare statute is ***essential*** to the resolution of plaintiff's state law claims. As Judge Saris previously concluded, an "essential element" of such state-law AWP claims is "proof of a discrepancy between the AWPs reported" by defendants and "the meaning of AWP under the Medicare statute." *See Montana*, 266 F. Supp. 2d at 255. The same holds true for plaintiff's claims to recover certain Medicare payments, which derive entirely from the allegation that Alabama's Medicaid program overpaid for Medicare Part B co-payments because defendants reported AWPs that were allegedly higher than what is allowed under the Medicare statute. *See Grable*, 125 S. Ct. at 2368 (finding federal tax law an "essential element" of state law claim for which the "meaning of the federal statute is actually in dispute.")

Plaintiff argues that because not all of its state law claims depend on the meaning of "AWP" under the federal Medicare statute, the federal question raised in its complaint is not

---

[26] As these two cases demonstrate, plaintiff mischaracterizes *Thomas v. Friends Rehabilitation Prog., Inc.*, No. Civ. A. 04-4288, 2005 WL 1625054 (E.D. Pa. July 11, 2005), to assert that *Grable* and its "recent progeny" stand for the proposition that resort to a federal statute to define a term does not raise a federal question. Pl. Br. 12. Moreover, *Thomas* is distinguishable because it merely reaffirmed that state negligence claims for which the violation of a federal statute is *prima facie* evidence of negligence are "the classic example" of a claim that, absent a private cause of action in the federal law, would disrupt the balance between federal and state judicial responsibilities. *Id.* at *3. In this case, however, plaintiff is not asserting a violation of the federal Medicare statute as *prima facie* evidence of violation of a state law; rather, the meaning of the term "AWP" in federal law is actually in dispute. *Cf. Montana*, 266 F. Supp. 2d at 255 (finding "discrepancy between AWPs reported" by defendant and the term's "meaning under the Medicare statute" to present a "federal question").

"substantial" enough to give rise to federal question jurisdiction. Pl. Br. 12-13. But plaintiff conflates the notion of a ***substantial*** federal question with a ***predominant*** claim. For purposes of federal jurisdiction, the fact that only one of the state law claims creates federal question jurisdiction is sufficient to confer federal jurisdiction over the entire action. *See Montana*, 266 F. Supp. 2d at 254 ("A state-court suit that includes ***at least one claim*** 'arising under the Constitution, laws, or treaties of the United States' can be removed to federal court.") (quoting 28 U.S.C. § 1441) (emphasis added); *see* 28 U.S.C. § 1441(c). Plaintiff also quotes the *Grable* decision out of context to assert that a federal issue must be "the only legal or factual issue contested" in the plaintiff's claims to warrant federal jurisdiction. Pl. Br. 12. The *Grable* court's test, however, does not impose this requirement. Under *Grable*, federal jurisdiction is proper when "a state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 125 S. Ct. at 2368.

*City of Huntsville v. City of Madison*, 24 F.3d 169 (11th Cir. 1994), is not to the contrary. There, the Eleventh Circuit rejected Huntsville's argument that the Tennessee Valley Authority ("TVA") Act raised a substantial federal question for its state law contract dispute with other local municipalities over certain tax payments because there was ***state*** law interpreting the TVA Act. *See id.* at 173-74. Here, in contrast, the meaning of AWP in the Medicare statute is exclusively determined by ***federal*** law, and thus "presents a federal question." *Montana*, 266 F. Supp. 2d at 255.

**B. There Is A "Strong Federal Interest" In The Uniform Interpretation Of The Term "AWP" In The Federal Medicare Statute.**

Federal question jurisdiction is particularly warranted in this case because there is a substantial federal interest in the uniform interpretation of the federal Medicare statute.

"Where the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (citation omitted); *see also Grable*, 125 S. Ct. at 2367 (substantial federal question depends on "a serious federal interest in claiming the advantages thought to be inherent in a federal forum") (citation omitted).

In this case, the federal interest in the uniform interpretation of the Medicare statute is paramount.[27] If this case is remanded and a state court judge is required to define AWP for purposes of this case, there is a grave risk that AWP will be interpreted differently in the other cases. Although AWP no longer is used in the federal Medicare program, it continues to be used in many state Medicaid programs, which are financed in large part with federal funds.[28] Thus, inconsistent decisions on the meaning of AWP in the various cases would sow confusion in the administration of the federally supported Medicaid programs in all states. *See In re: Zyprexa Prod. Liab. Litig.*, 2005 WL 1561346, at *2 (recognizing that "the substantial federal funding provisions involved [in Medicaid programs] and the allegations about the violation of federal law" warrant federal jurisdiction.). In analogous circumstances, other federal courts have concluded that the importance of a uniform application of a federal standard supports a finding

---

27 The substantial federal interest in the uniform interpretation of the Medicare statute also counsels in favor of staying this action pending transfer to the MDL proceeding in Boston. As described in defendants' motion to stay, Judge Saris has already spent over three years grappling with the factual and legal intricacies of these issues and the meaning of AWP under the Medicare Act. *See* Def. Stay Motion 11-12.

28 For example, in Alabama, the federal government currently pays 70% of the cost of the State's Medicaid program. *See* 68 Fed. Reg. 67,676, 67,677 (Dec. 3, 2003).

of federal question jurisdiction. *Grable,* 125 S. Ct. at 2368; *Ormet Corp.*, 98 F.3d at 807; *Municipality of San Juan*, 2005 WL 1644942, at *4 n.6.[29]

### C. Federal Jurisdiction Over Plaintiff's State Law Claims To Recover Certain Medicare-Related Payments Will Not Alter The "Balance Of Federal And State Judicial Responsibilities."

Finally, exercising federal jurisdiction here will in no way disrupt "the sound division of labor between state and federal courts governing the application" of that jurisdiction. *Grable*, 125 S. Ct. at 2367. The AWP MDL court already exercises jurisdiction over state law claims very similar to plaintiff's Medicare-related state law claims, as well as many other related claims. *See, e.g., Montana*, 266 F. Supp. 2d at 260, 263 (exercising supplemental jurisdiction over AWP-based state law claims brought by Montana and Nevada). Allowing plaintiff's state law claims to be considered by the same federal court therefore would not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2368 (finding federal jurisdiction warranted when "resolv[ing] genuine disagreement over federal [law] … provisions will portend only a microscopic effect on the federal-state division of labor"). Thus, contrary to plaintiff's assertions, Pl. Br. 12, its state law fraud claims will not disrupt the "federal state division of labor." *Grable*, 125 S. Ct. at 2368.

## V. THE COURT SHOULD STAY ITS DECISION ON PLAINTIFF'S REMAND MOTION.

In addition to opposing plaintiff's motion to remand, defendants have also moved for a stay pending transfer of this case to the AWP MDL court in Boston. *See* Def. Stay Motion.

---

[29] Contrary to plaintiff's assertion, the Eleventh Circuit's reasoning in *Jairath v. Dyer* does not extend to the circumstances of plaintiff's Medicare-based state law claims. Pl. Br. 13. In *Jairath*, the Eleventh Circuit concluded that, although a violation of the ADA was an element (*i.e., prima facie* evidence) of the plaintiff's claim, there was "no need" for uniformity in application at the federal level that would confer federal question jurisdiction in the absence of a private right of action. 154 F.3d 1280, 1284 n.10 (11th Cir. 1998).

In a widely followed decision, the United States District Court for the Eastern District of Wisconsin set out an analytical framework for cases where a court has before it both a motion to remand and a motion to stay pending transfer to the MDL court. *Meyers v. Bayer AE*, 143 F. Supp. 2d 1044 (E.D. Wisc. 2001).[30] First, the court should "make a preliminary assessment of the jurisdictional issue." *Id.* at 1048. Second, if the jurisdictional issue "appears factually or legally difficult," the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. *Id.* at 1049. Third, if those circumstances are present, the court should address the stay motion, "weighing the judicial economy gained and the hardship to the moving party avoided by granting the stay against the harm to the non-moving party." *Id.*

This case clearly satisfies *Meyers*' three-part test. First, the foregoing sections of this brief clearly demonstrate that the jurisdictional issue is a difficult one that warrants careful judicial reflection. It clearly is not a "sure loser" that warrants summary remand of this case. *Id.* at 1048. Second, there are ten other cases that were removed from state courts on the same day

---

30 *See Moton v. Bayer Corp.*, Civ. No. 05-0310-WSM, 2005 WL 1653731 at 2 n.5 (S.D. Ala., July 8, 2005) (collecting cases following the *Meyers* analysis). Granting a stay before deciding plaintiff's motion to remand is well within the Court's discretion. *See Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 463 (D.C. Cir. 1999) ("There is an array of non-merits questions that we may decide in any order. . . . There is no unyielding jurisdictional hierarchy" for deciding competing motions to transfer and motion to remand) (citation and quotations omitted). *University of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999), is not to the contrary. In that case, the court of appeals held that a district court erred in dismissing a case before it considered the plaintiff's remand motion because the lower court had "improvidently reached a complex question of substantive state law" that it could have avoided by deciding the remand motion first. *Id.* at 408. In this case, defendants are not seeking a substantive ruling on the merits. Defendants' stay motion is one of those "non-merits questions" that may be decided "in any order." *Galvan,* 199 F.3d at 463. Moreover, as defendants demonstrate in their motion to stay, federal courts and the JPML have consistently recognized that it is proper to stay a decision on a motion to remand and leave the jurisdictional issue to the MDL court. *See* Def. Stay Motion 10 (citing cases).

as this one and that present the same jurisdictional issue as this case. Each of these cases is in line to be transferred to the JMDL. Third, as demonstrated in defendants' motion to stay, the interests of judicial economy and consistency of decision overwhelmingly weigh in favor of a stay and the balance of hardships tips decidedly in favor of defendants. The avoidance of requiring defendants to litigate identical AWP claims in multiple jurisdictions is a substantial consideration, and the relatively brief delay that plaintiff will encounter until this case is transferred to Judge Saris is not a sufficient factor to warrant a stay in the face of the economies and efficiencies to be gained through consolidation.[31]

**CONCLUSION**

Defendants' motion to stay should be granted, or, in the alternative, plaintiff's motion to remand should be denied.

*Attorneys for Defendants*

---

[31] *See, e.g., Egon v. Del-Van Fin. Corp.*, Civ. No. 90-4338, 1991 WL 13726, at *1 (D.N.J. Feb. 1, 1991) ("[E]ven if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay.") (citation omitted); *Tench v. Jackson Nat'l. Life Ins. Co.*, No. 99 C 5182, 1999 WL 1044923, at *2 (N.D. Ill. Nov. 12, 1999) (granting a stay as plaintiff would suffer no prejudice from the short delay); *Good v. Prudential Ins. Co.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (granting a stay where "a stay pending a final decision by the MDL Panel would likely be brief"); *Rosenfeld v. Hartford Fire Ins. Co.*, Nos. 88 Civ. 2153 (MJL), 88 Civ. 2252, 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988) ("While [plaintiffs] may suffer some initial delay, once the cases are coordinated and the defendants are able to respond to all the complaints in a coordinated manner, more time may well be saved than was lost.").

**Abbott Laboratories, Inc.**

/s/Betsy Collins
Betsy Collins
Leah Poynter
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

Daniel E. Reidy
James R. Daly, III
John Ryan Mitchell
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601

**Alcon Laboratories, Inc.**

/s/Edward S. Sledge, III

Edward S. Sledge, III
Archibald Reeves, IV
McDowell Knight Roedder & Sledge, L.L.C.
63 South Royal Street
Suite 900
Mobile, Alabama 36602

**Allergan, Inc.**

/s/F.M. Haston, III

F.M. Haston, III
Bradley Arant LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Richard D. Raskin
Michael P. Doss
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

**Alpharma, Inc.**
**PurePac Pharmaceutical Co.**

/s/Steven F. Casey
Steven F. Casey
Christopher F. Heinss
Balch & Bingham LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

John R. Fleder
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005

Donald R. Jones, Jr.
Donald R. Jones, Jr., P.C.
2000 Interstate Park Drive
Suite 104
Montgomery, Alabama 36109

**Amgen Inc.**

/s/Anthony A. Joseph
Anthony A. Joseph
Johnston Barton Proctor & Powell LLP
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618

Joseph H. Young
Steven F. Barley
Hogan & Hartson, LLP
111 S. Calvert Street, Suite 1600
Baltimore, Maryland 21202

**Andrx Corporation**
**Andrx Pharmaceuticals, Inc.**

/s/James H. Anderson
James H. Anderson
Beers, Anderson, Jackson, Patty
& Van Heest, P.C.
P.O. Box 1988
Montgomery, AL 36102

Robert J. Muldoon, Jr.
James W. Matthews
Courtney A. Clark
Katy E. Koski
Sherin Lodgen LLP
101 Federal Street
Boston, MA 02110

**AstraZeneca Pharmaceuticals LP**
**AstraZeneca LP**

/s/Thomas Christian
Thomas Christian
Sharon Stuart
Christian & Small
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203

D. Scott Wise
Michael Sean Flynn
Kimberly Denise Harris
Carlos M. Pelayo
Davis, Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

**Aventis Pharmaceuticals Inc.**

/s/Richard H. Gill
Richard H. Gill
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
Post Office Box 347
Montgomery, Alabama 36101-0347

Carlos Provencio
Shook Hardy & Bacon L.L.P.
Hamilton Square
600 14th Street, N.W.
Suite 800
Washington, D.C. 20005-2004

Michael L. Koon
Joseph G. Matye
Nicola Heskett
Shook Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108

**Aventis Behring, LLC**
**ZLB Behring, LLC**

/s/Richard H. Gill
Richard H. Gill
C. Nelson Gill
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
Post Office Box 347
Montgomery, Alabama 36101-0347

William D. Nussbaum
Jonathan T. Rees
Gregory Petouvis
Hogan & Hartson, LLP
555 Thirteenth Street, NW
Washington, DC 20004

**Barr Laboratories, Inc.**

/s/Bruce F. Rogers
Bruce F. Rogers
Bainbridge, Mims, Rogers & Smith LLP
600 Luckie Drive
Post Office Box 530886
Birmingham, Alabama 35253

Karen Walker
Pamela Auerbach
Sean Trende
Barak Cohen
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005

**Baxter International**
**Baxter Healthcare Corporation**

/s/J. Rushton McClees
J. Rushton McClees
Sirote & Permutt, P.C.
2311 Highland Avenue
Birmingham, Alabama 35205

Merle M. DeLancey, Jr.
Jason D. Wallach
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037-1526

**Bayer Corporation**
**Bayer Pharmaceuticals Corporation**
**Bayer Healthcare, LLC**

/s/F.M. Haston, III
F.M. Haston, III
Bradley Arant LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203

Richard D. Raskin
Michael P. Doss
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

**Biovail Pharmaceuticals, Inc.**

/s/F.M. Haston, III
F.M. Haston, III
Bradley Arant LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203

**Boehringer Ingelheim Corporation**
**Boehringer Ingelheim Pharmaceuticals**
**Roxane Labs, Inc.**

/s/Sandy Robinson
Sandy Robinson
Jarrod J. White
Cabaniss, Johnston, Gardner, Dumas & O'Neal
Post Office Box 2906
Mobile, Alabama 36652

Paul Coval
Douglas L. Rogers
Darrell A.H. Miller
Alexandra T. Schimmer
Vorys Sater Seymour & Pease LLP
52 East Gay Street
Post Office Box 1008
Columbus, Ohio 43216-1008

**Bristol-Myers Squibb Co.**

/s/Harlan I. Prater, IV
Harlan I. Prater, IV
Stephen J. Rowe
Derrick A. Mills
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200

Lyndon M. Tretter
Steven M. Edwards
James Zucker
Hogan & Hartson L.L.P.
875 Third Avenue
New York, New York 10022

**Dey, L.P.**

/s/Joseph W. Letzer
Joseph W. Letzer
Gary M. London
Burr & Forman LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203

Warren C. Matthews
Burr & Forman, LLP
201 Monroe St., Suite 1950
Montgomery, AL 36104

Christopher C. Palermo
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

**Eisai, Inc.**

/s/Julia Boaz Cooper
Julia Boaz Cooper
Bradley, Arant, Rose & White, LLP
1819 5th Avenue North
Birmingham, Alabama 35203-2104

Brien T. O'Connor
E. Abim Thomas
Ropes & Gray LLP
One International Place
Boston, MA 02110

**Eli Lilly and Company**

/s/Tabor R. Novak, Jr.
Tabor R. Novak, Jr.
Ball, Ball, Matthews & Novak, P.A.
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama 36109

William Davis
Mitz, Levin, Cohen, Ferris
Glovsky & Popeo
701 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004

**Endo Pharmaceuticals, Inc.**

/s/Lawrence Clark
Lawrence Clark
Robert Eckinger
Michael Wade
Gilbert Steindorff
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

Jonathan Stern
Nancy Leeds Perkins
David Fauvre
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC 20004-1206

**ETHEX Corporation**

/s/Lawrence Clark
Lawrence Clark
Robert Eckinger
Michael Wade
Gilbert Steindorff
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

Robert S. Litt
Steven Diamond
Justin Antonipillai
Michael Rinaldi
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC 20004-1206

**Forest Laboratories, Inc.**
**Forest Pharmaceuticals, Inc.**

/s/William Hardie
William Hardie
Johnstone, Adams, Bailey, Gordon & Harris, LLC
Post Office Box 1988
Mobile, Alabama 36633-1988

Peter J. Venaglia
Brian Rafferty
Dornbush Schaeffer, Strongin
& Weinstein, LLP
747 Third Avenue
New York, New York 10017

**Fujisawa Healthcare, Inc.**
**Fujisawa USA, Inc.**

/s/Richard L. Sharff, Jr.
Richard L. Sharff, Jr.
Bradley, Arant, Rose & White
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104

Kathleen McGuan
Michael T. Scott
Andrew L. Hurst
Reed Smith LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, DC 20005

**Genzyme Corporation**

/s/Julia Boaz Cooper
Julia Boaz Cooper
Bradley, Arant, Rose & White, LLP
1819 5th Avenue North
Birmingham, Alabama 35203-2104

Brien T. O'Connor
Eric P. Christofferson
Ropes & Gray LLP
One International Place
Boston, MA 02110

**Gilead Sciences, Inc.**

/s/Lawrence Clark

Lawrence Clark
Robert Eckinger
Gilbert Steindorff
Michael Wade
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

Robert S. Litt
Rebecca Dubin
Joel Richardson
Jessica Medina
Arnold & Porter LLP
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC 20004-1206

**Hoffmann-La Roche Inc.**

/s/Edward S. Sledge, III
Edward S. Sledge, III
Archibald T. Reeves, IV
McDowell, Knight, Roedder & Sledge, LLC
Post Office Box 350
Mobile, Alabama 36601

Kevin Sullivan
Grace Rodriguez
John Shakow
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706

**Immunex Corporation**

/s/W. Stancil Starnes
W. Stancil Starnes
Starnes & Atchison LLP
7th Floor
100 Brookwood Place
Post Office Box 598512
Birmingham, AL 35259-8512

David J. Burman
Kathleen M. O'Sullivan
Zoe Philippides
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099

**IVAX Corporation**
**IVAX Pharmaceuticals, Inc.**

/s/George W. Walker, III
George W. Walker, III
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

Bruce Wessel
Brian Ledahl
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California 90067-4276

**Johnson & Johnson**
**ALZA Corporation**
**Janssen Pharmaceutica Products, L.P.**
**McNeil-PPC, Inc.**
**Ortho Biotech Products, L.P.**
**Ortho-McNeil Pharmaceutical, Inc.**

/s/Robert F. Northcutt
Robert F. Northcutt
James H. McLemore
Capell & Howard, P.C.
150 South Perry Street [36104]
Post Office Box 2069
Montgomery, Alabama 36102-2069

Andrew D. Schau
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710

**K-V Pharmaceutical Company**

/s/Lawrence Clark
Lawrence Clark
Robert Eckinger
Gilbert Steindorff
Michael Wade
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

Robert S. Litt
Steven Diamond
Justin Antonipillai
Michael Rinaldi
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC 20004-1206

**King Pharmaceuticals, Inc.**
**Monarch Pharmaceuticals, Inc.**

/s/Lisa Borden
Lisa Borden
Baker Donelson Bearman Caldwell & Berkowitz, P.C.
1600 SouthTrust Tower, 420 20th Street
Birmingham, Alabama 35203

Gary Greenberg
Louis J. Scerra, Jr.
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

Sam B. Blair, Jr.
John B. Starnes
Baker Donelson Bearman Caldwell & Berkowitz, P.C.
165 Madison Avenue
Suite 2000
Memphis, TN 38103

**MedImmune, Inc.**

/s/Lee H. Copeland
Lee H. Copeland
Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, Alabama 36101-0347

Steve Umin
James Hayes
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5901

**Merck & Co., Inc.**

/s/Robert C. Brock
Robert C. Brock
Robert Huffaker
F. Chadwick Morriss
Rushton, Stakely, Johnson & Garrett, P.A.
P.O. Box 270
Montgomery, AL 3610-0270

John M. Townsend
Robert P. Reznick
Robert B. Funkhouser
Hughes Hubbard & Reed LLP
1775 I Street N.W.
Washington, DC 20006-2401

**Mylan Laboratories Inc.**
**Mylan Pharmaceuticals Inc.**
**UDL Laboratories, Inc.**

/s/David Long-Daniels
David Long-Daniels
Greenberg Traurig, LLP
3290 Northside Parkway, Suite 400
Atlanta, Georgia 30327

Gary R. Greenberg
Louis J. Scerra, Jr.
Jonathan D. Cohen
James M. Vant
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

**VI. Novartis Pharmaceuticals Corporation**

/s/William D. Coleman
William D. Coleman (COL030)
James N. Walter, Jr. (WAL021)
Capell & Howard, P.C.
Post Office Box 2069
Montgomery, Alabama 36102-2069

Saul Morgenstern
Jane W. Parver
Mark Godler
Kay Scholer LLP
425 Park Avenue
New York, New York 10022-3598

**Novo Nordisk**

/s/F.M. Haston, III
F.M. Haston, III
Bradly, Arant LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Richard D. Raskin
Michael P. Doss
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

**Organon Pharmaceuticals USA**

/s/Edward S. Sledge, III
Edward S. Sledge, III
Archibald T. Reeves, IV
McDowell, Knight, Roedder & Sledge, LLC
Post Office Box 350
Mobile, Alabama 36601

William Campos
David Covey
Sedgwick, Detert, Moran & Arnold LLP
125 Broad Street
New York, New York 10004

**Par Pharmaceutical, Inc.**

/s/George W. Walker
George W. Walker
Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, Alabama 36101-0347

Richard Cooper
Paul K. Dueffert
Thomas J. Roberts
Catherine Levy
Williams & Connolly LLP
725 12th Street, NW
Washington, DC 20005

**Pfizer Inc.**
**Agouron Pharmaceuticals, Inc.**
**Pharmacia Corporation**
**Pharmacia & Upjohn Company**
**G.D. Searle, LLC**

/s/Philip H. Butler

Philip H. Butler
George R. Parker
Bradley, Arant, Rose & White LLP
Alabama Center for Commerce Bldg.
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104

Scott Stempel
Morgan Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

John C. Dodds
Kimberly K. Heuer
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

**Purdue Pharma, L.P.**

/s/Harlan Prater
Harlan Prater
Stephen J. Rowe
Derrick A. Mills
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200

Lori A. Schechter
Tiffany Cheung
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482

**Roche Laboratories, Inc.**

/s/Edward S. Sledge, III

Edward S. Sledge, III
Archibald T. Reeves, IV
McDowell, Knight, Roedder & Sledge, LLC
Post Office Box 350
Mobile, Alabama 36601

Kevin Sullivan
Grace Rodriguez
John Shakow
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706

**Sandoz, Inc.**

/s/C. Clay Torbert, III

C. Clay Torbert, III
Chad W. Bryan
Capell & Howard, P.C.
150 South Perry Street
Montgomery, Alabama 36104

Wayne A. Cross
Michael J. Gallagher
Brendan Woodard
White & Case
1155 Avenue of the Americas
New York, New York 10036-2787

**Sanofi-Synthelabo Inc.**

/s/Richard H. Gill

Richard H. Gill
Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, Alabama 36101-0347

Kevin Sullivan
Grace Rodriguez
John Shakow
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706

**Schering-Plough Corporation**
**Warrick Pharmaceuticals Corporation**

/s/John A. Henig, Jr.

John A. Henig, Jr.
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

Brien T. O'Connor
John T. Montgomery
Ropes & Gray LLP
One International Place
Boston, MA 02110

J. Steven Baughman
Christopher May
Ropes & Gray LLP
One Metro Center
700 12th Street N.W., Suite 900
Washington, D.C. 20005

**SmithKline Beecham Corporation**
**d/b/a GlaxoSmithKline**

/s/Joseph P. Babington
Joseph P. Babington
Patrick C. Finnegan
Jason R. Watkins
Helmsing Leach Herlong Newman & Rouse
150 Government St.
Suite 2000
Mobile, Alabama 36602

Mark H. Lynch
Geoffrey E. Hobart
Ronald G. Dove, Jr.
Covington & Burling
1201 Pennsylvania Avenue NW
Washington, D.C. 20004

Frederick G. Herold
Thomas H. Lee, II
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304

Thomas H. Lee II
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

Mark D. Seltzer
Sarah Anne Franklin
Mona Mahendra Patel
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

**Takeda Pharmaceuticals North America, Inc.**

/s/Joseph C. Espy, III

Joseph C. Espy, III
Melton, Espy & Williams
Post Office Drawer 5130
Montgomery, Alabama 36103

Robert Stauffer
Anthony C. Porcelli
Jenner & Block LLP
1 IBM Plaza
Suite 4200
Chicago, Illinois 60611

**TAP Pharmaceutical Products, Inc.**

/s/Betsy Collins

Betsy Collins
Leah Poyntner
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

Daniel E. Reidy
James R. Daly, III
John Ryan Mitchell
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601

**Teva Pharmaceuticals USA, Inc.**

/s/W. Joseph McCorkle, Jr.
W. Joseph McCorkle, Jr.
Balch & Bingham, LLP
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104

F. Inge Johnstone
Balch & Bingham LLP
1710 6th Avenue North
P.O. Box 306
Birmingham, AL 35201-0306

Elizabeth I. Hack
T. Reed Stephens
Sonnenschein Nath & Rosenthal LLP
1301 K Street, NW
Suite 1600 East Tower
Washington, DC 20005

**Watson Pharmaceuticals, Inc.**
**Watson Laboratories, Inc.**
**Watson Pharma, Inc.**

/s/Steven F. Casey
Steven F. Casey
Christopher F. Heinss
Balch & Bingham LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

Douglas B. Farquhar
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, DC 20005

**Wyeth Pharmaceuticals, Inc.**
**Wyeth, Inc.**

/s/Peck Fox
Peck Fox
Maynard, Cooper & Gale, P.C.
201 Monroe Street
Suite 1650
Montgomery, Alabama 36104-3720

Craig Holden
Kelly J. Davidson
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

Maibeth J. Porter
Lee E. Bains, Jr.
Maynard, Cooper & Gale, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and that, in accordance with an agreement among defense counsel, I have served a copy of the same by electronic mail upon counsel for each of the remaining parties on the same date:

Troy King, Attorney General
State of Alabama
300 State House
11 South Union Street
Montgomery, Alabama 36130

Roger L. Bates
Hand, Arendall, L.L.C.
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203

Caine O'Rear III
Windy C. Bitzer
Hand Arendall, L.L.C.
Post Office Box 123
Mobile, Alabama 36601

Jere L. Beasley
W. Daniel Miles, III
Clinton C. Carter
Beasley, Allen Crow, Methvin,
Portis & Miles, PC
P. O. Box 4160
Montgomery, Alabama 36103-4160

/s/William D. Coleman
Of Counsel